199 N.J. Super. 339 (1984)
489 A.2d 720
STATE OF NEW JERSEY, PLAINTIFF,
v.
JAMES TAYLOR, DEFENDANT.
Superior Court of New Jersey, Law Division Camden County.
Decided November 16, 1984.
*340 Jay Blumberg, for plaintiff (John Mariano, Camden County Prosecutor, attorney, Kevin Dochney, on the brief).
Ira Back for defendant.
PALESE, J.S.C.
Defendant has been charged with a violation of the New Jersey Drinking-Driving Law, N.J.S.A. 39:4-50 et seq. He has now moved before the Superior Court, Law Division, to suppress (1) statements made at the scene, (2) statements made at police headquarters and (3) results of breathalyzer and field sobriety tests. Defendant challenges issues that have been previously settled in this State, State v. Macuk, 57 N.J. 1 (1970), and contends that the recent decision by the United States Supreme Court in Berkemer v. McCarty, ___ U.S. ___, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) mandates a review and *341 reversal of Macuk and its progeny because of a failure to give Miranda warnings to defendant.
On July 14, 1984, at approximately 4:45 a.m., Patrolman Edward Powers of the Merchantville, New Jersey Police Department, while on routine patrol, observed the automobile driven by defendant proceeding east on Maple Avenue. The automobile was weaving between the curb and the double line dividing the highway. Patrolman Powers was proceeding in a westerly direction on the same street. After passing the vehicle Patrolman Powers turned his patrol car around and proceeded to follow defendant's automobile. The patrolman followed for approximately 1 1/2 blocks, still observing the continued weaving of defendant's vehicle. He turned on the overhead lights of his patrol car but defendant continued to operate his vehicle. The patrolman then sounded his siren and defendant stopped his car.
Patrolman Powers approached the vehicle and asked defendant to produce his driver's license, registration and insurance card. Defendant immediately produced the insurance card and registration from his glove compartment; he then handed his wallet to the patrolman for the patrolman to obtain the driver's license. The patrolman returned the wallet to defendant and asked defendant to remove his license, which defendant eventually did after "fumbling through the wallet." After watching defendant remove his license the patrolman asked defendant if he had been drinking. Defendant replied that "yes," he had been drinking "across from work." Patrolman Powers then asked defendant to step out of the car and proceeded to conduct a field sobriety test.
Several routine balance tests were conducted which defendant was unable to perform. Patrolman Powers then informed defendant that he was under arrest for driving under the influence of intoxicating beverages. Defendant was transported to police headquarters. He was questioned at that time for the purpose of completing an alcohol influence report, was *342 subjected to several sets of balance tests and was then given a breathalyzer test. He again "failed" the balance tests and registered .19 on the breathalyzer machine. Several of the questions on the alcohol influence report relate to defendant's consumption of alcohol. In his answers defendant admitted drinking beer at both his home and at a local bar. He also admitted that he had taken his first drink at 2:00 p.m. and his last drink at 9:00 p.m. on July 13, 1984. At no time after defendant was placed under arrest was he given Miranda warnings.
The factual situation in Berkemer was similar to that presented to this court. The arresting officer observed Berkemer's vehicle weaving on an interstate highway. Upon stopping the vehicle the officer conducted a field sobriety test and questioned Berkemer at the scene about the use of intoxicants. Berkemer admitted that he had been drinking and smoking marijuana. After being formally taken into custody and transported to the jail Berkemer was given a breathalyzer test and again questioned by the arresting officer. This questioning was done for the purpose of completing the state highway patrol alcohol influence report. Berkemer again answered affirmatively when asked whether he had been drinking. He also admitted to being "barely" under the influence of alcohol. The patrolman in Berkemer, as the patrolman in the present case, failed to advise defendant of his Miranda rights after placing defendant under arrest.
The Supreme Court granted certiorari on a petition from a decision of the United States Court of Appeals for the Sixth Circuit "to resolve confusion in the Federal and State Courts regarding the applicability of our ruling in Miranda to interrogations involving minor offenses in the questioning of motorists detained pursuant to traffic stops." ___ U.S. at ___, 104 S.Ct. at 3144, 82 L.Ed.2d at 326-327.
After finding that no rights of Berkemer were violated prior to his being placed under arrest, the Court held that a person *343 subjected to custodial interrogation is entitled to the procedural safeguards enunciated in Miranda regardless of the nature or severity of the offense. ___ U.S. at ___, 104 S.Ct. at 3148, 82 L.Ed.2d at 331. The Court determined that any statements made at the scene were properly admissible and any statements made after arrest were not admissible; therefore, all statements made at the police station were inadmissible.
Defendant now argues that the Berkemer decision compels this court to exclude the statements made at the scene, the statements made at the Merchantville police station and the results of the breathalyzer and field sobriety tests. The issues presented to this court were previously directed to the New Jersey Supreme Court in State v. Macuk, supra. In Macuk the court held that it was not necessary to give Miranda warnings prior to on-the-scene questioning, the administration of a breathalyzer test or even before the "short, limited pre-test questioning at police headquarters." 57 N.J. at 15. Justice Hall, writing for the court, noted that this ruling followed what was then the law: "in the view of the absence of any indication to the contrary by the United States Supreme Court, the rules of Miranda should be held inapplicable to all motor vehicle violations." 57 N.J. at 15-16. Since Berkemer is an indication by the United States Supreme Court that the rules of Miranda are applicable to motor vehicle violations if there is to be a custodial interrogation, this court does not find that it would be impugning the prerogatives of our Supreme Court by addressing the issue as permitted by Justice Hall. Defendant argues that the decision in Berkemer now serves to overrule Macuk in its entirety.
Dealing with the field sobriety and breathalyzer tests first, the court finds these results to be admissible because they are nontestimonial evidence and implicate no Fifth Amendment rights. See, e.g. U.S. v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); State v. Andretta, 61 N.J. 544 (1972) (compelled production of voice exemplars not violative of Fifth *344 Amendment); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); State v. Carr, 124 N.J. Super. 114 (Law Div. 1973) (taking of handwriting exemplars not violative of Fifth Amendment); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); State v. Blair, 45 N.J. 43 (1965) (taking of blood sample over objection of suspected intoxicated driver not violative of Fifth Amendment). This view was adopted by the New Jersey Supreme Court in Macuk and remains undisturbed by defendant's challenge. Defendant has failed to provide this court with any legal authority which would require a ruling that Miranda warnings should be given before nontestimonial evidence can be taken. Defendant's reliance upon Berkemer is misplaced since the Supreme Court did not address this issue. Thus, the Berkemer decision does not change the law of New Jersey regarding these tests.
Next, defendant argues that statements made at the scene are inadmissible. Again, defendant has asked this court to give the Berkemer decision a blanket effect and exclude these statements. The problem here is that defendant has failed to show that the roadside questioning was of the coercive, intimidating type against which the United States Supreme Court intended to protect in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). There is no indication that the questioning was of such a nature that defendant's privilege against self-incrimination was impaired in any way. The investigating patrolman simply asked defendant a few questions for the purpose of determining whether defendant was under the influence of alcohol, as the officer suspected. Such limited on-the-scene questioning has long been accepted by the courts for the purpose of determining a person's identity and "to try to obtain information confirming or dispelling the officer's suspicions." Berkemer, ___ U.S. at ___, 104 S.Ct. at 3151, 82 L.Ed.2d at 334; State v. Mann, 171 N.J. Super. 173, 178 (1979), certif. den. 82 N.J. 290 (1980); see also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
*345 Nor was defendant here "in custody" for Miranda purposes. When Patrolman Powers observed defendant's vehicle weaving along Maple Avenue, he was not only entitled but was expected to stop defendant for both defendant's safety as well as that of the general public. Although this stop may be considered a "seizure" for Fourth Amendment purposes, see Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979), "persons temporarily detained pursuant to such stops are not `in custody' for the purposes of Miranda." Berkemer, ___ U.S. at ___, 104 S.Ct. at 3151, 82 L.Ed.2d at 334-335.
Finally, defendant argues that the statements made at the station house are inadmissible. The station-house statements in this case and the station-house statements made in Berkemer were made in response to questioning for the purpose of completing an alcohol influence report. Since the present defendant, as the respondent in Berkemer, were both subjected to a "custodial interrogation" as established in Miranda, the Berkemer decision is dispositive of this issue. The Supreme Court's decision to exclude Berkemer's station-house statements compels this court to reach the same result. Therefore, the statements made by defendant at the Merchantville police station are excluded and are not admissible.
The court finds that the statements made by defendant at the scene, as well as the field sobriety and breathalyzer test results are admissible, while the statements made at the police headquarters are inadmissible. More specifically, the excluded statements are those numbered 11 through 15[1] on the Merchantville police alcohol influence report.
A proper order shall be submitted.
NOTES
[1] Questions 11 through 15 Merchantville police alcohol influence report

(11) Have you had any alcoholic drinks?
(12) What and how much?
(13) Where?
(14) When did you have your first drink?
(15) Last drink?