Gail Victoria SMITH,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 49A02-8602-CR-51.

Court of Appeals of Indiana,
First District.

Aug. 4, 1986.
Rehearing Denied Sept. 16, 1986.

RATLIFF, Judge.

## STATEMENT OF THE CASE

The defendant appeals from the trial court's judgment convicting her of driving while intoxicated causing the death of another, a class C felony. We affirm.

## FACTS

On the morning of April 17, 1985, Gail Smith (defendant) was driving her automobile eastward in Indianapolis while taking her child to school. A young Vietnamese-American child, Hau Huyn, was walking to school with his sister and her friend. Testimony at trial conflicted as to whether the three children were walking on the rocky and grassy shoulder and not on the pavement. Defendant's automobile hit Hau Huyn, knocking him to the ground so that his feet were in the stones while the rest of his body was on the grass. There was evidence that the victim may have darted out in front of the defendant's car. The victim died as a result of the accident.

The responding police officer approached the defendant at the scene of the accident. The officer detected the odor of alcohol on the defendant's breath. The officer also observed that the defendant was walking stiffly and was confused in her speech. Based upon those observations, the police officer told the defendant that she would be offered a breathalyzer test.

The defendant was taken to a roll call site where she was given three field sobriety tests. She passed the leg-stand test, but failed the walk-turn test and gaze nystagmus test. The defendant then took a breathalyzer test which revealed that her blood-alcohol concentration was .21 percent.

Reginald B. Bishop, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Jay Rodia, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

## ISSUES

1. Did the trial court abuse its discretion when it denied the defendant's motion for continuance?

2. Was there substantial evidence of probative value to uphold the jury's finding

that the defendant caused in fact the child's death?

3. Did the trial court abuse its discretion in refusing the defendant's proposed jury instruction on the defense of accident?

4. Did the trial court err by denying the defendant's motion to suppress evidence resulting from the field sobriety tests and breathalyzer and the defendant's written statement?

5. Did the trial court abuse its discretion in sentencing the defendant to five years in prison, three of which were suspended?

## DISCUSSION AND DECISION

*Issue One*

The defendant claims that the trial court should have granted her motion for a continuance so that she could prepare her defense of sunblindness. On August 5, 1985, the defendant filed a motion for continuance until after August 25, 1985. The defendant claimed that her expert witness needed to observe the scene of the accident on August 25th in order to evaluate the role of the sun on the accident. The sun would have been in the same position on August 25th as on April 17th, the date of the accident. The trial court denied her motion. The trial commenced on August 12, 1985.

Our supreme court recently addressed the standard of review for a trial court's ruling on a motion for continuance. Justice Pivarnik, writing for a unanimous court, held:

"Ind.Code § 35–36–7–1 (Burns 1982) allows a continuance to be granted upon proper showing that there is an absence of evidence or illness of the defendant or a witness which precludes the conducting of the trial, provided a motion is made five days prior to commencement of trial and is supported by appropriate affidavits. Continuances not conforming to the statutory edicts may be granted within the sole discretion of the trial court. *Carter v. State* (1983), Ind., 451 N.E.2d 639. The denial of a Motion for Continu-

ance is reversible only when the denial constituted an abuse of discretion and the record demonstrates that the accused was prejudiced. *Harris v. State* (1981), Ind., 427 N.E.2d 658."

*Clarkson v. State* (1985), Ind., 486 N.E.2d 501, 504.

The defendant's motion did not fall within any of the statutory bases of Ind. Code § 35–36–7–1. The only possible ground is in subsection (a) for "the absence of evidence." However, there was no absence of evidence in the case under consideration. The expert's affidavit which accompanied the motion for a continuance did not allege an absence of evidence. The expert stated that "the facts ... indicate that the sun *was* in the field of vision of the defendant...." Record at 71 (our emphasis). This statement disproves any absence of evidence. The purpose of the motion was simply to enable the expert to be more precise in his determinations. Since there was no "absence of evidence" or any other statutory basis contained in Ind.Code § 35–36–7–1 for the defendant's motion for continuance, we will uphold the trial court's denial of the motion in the absence of a clear showing of an abuse of discretion. *Clarkson*, at 504; *Randall v. State* (1985), Ind., 474 N.E.2d 76, 81.

We hold that the trial court did not abuse its discretion in denying the motion. The expert conceded that he could still develop sufficient information to reconstruct the circumstances of the accident scene despite the court's denial of the continuance. Record at 284. In fact, the defendant is unable to show how she was prejudiced in any way by the court's ruling. Her expert witness testified before the jury at length as to the effect of the sun on the defendant at the time of the accident. Since no prejudice was shown and the court did not abuse its discretion, we will not disturb the trial court's denial of the motion for continuance.

This year our supreme court held that prejudice need not be shown if the defendant could prove that the trial court committed a fundamental error in denying a mo-

tion for continuance. *Davis v. State* (1986), Ind., 487 N.E.2d 817. However, "[f]undamental error ... occurs only where it is established that adequate time was not afforded." *Id.* at 820. In the case at bar, the defendant had ample time to prepare her defense, even on the issue of sunblindness. Therefore, we find no reversible error.

*Issue Two*

█ Defendant claims that the state failed to prove that her intoxication caused the death of the child. At the outset, we note that we cannot reweigh the evidence nor reassess the credibility of witnesses. *Freeman v. State* (1985), Ind.App., 482 N.E.2d 266. Thus, we will uphold the jury's determination if there is substantial evidence of probative value to support the verdict.

Prior to 1986, the law on causation was that "the state must prove beyond a reasonable doubt that the defendant (1) operated a vehicle (2) while intoxicated, and (3) that the *intoxication* did directly and proximately cause serious bodily injury." *Micinski v. State* (1985), Ind.App., 479 N.E.2d 632, 636 (emphasis added). Consequently, the state thus had to prove that the intoxication caused the injury.

This year, our supreme court rejected this analysis. In *Micinski v. State* (1986), Ind., 487 N.E.2d 150, the court rejected a causation analysis based upon the driver's intoxication. The *Micinski* court held that the state need not prove that the defendant's intoxication caused the accident. Rather, the state simply must show that the defendant caused the accident. As the court explained:

"The statute creates a crime—driving while intoxicated—and adds higher penalties if the commission of this offense results in serious injury or the death of another person. There is, of course, a need to show causation; in the typical case a showing that the driver ran into the victim would suffice. We find nothing in the statute to indicate that the General Assembly intended to require that the State prove a causal link between the driver's intoxication and the fact that injury resulted from his driving. ...

"Analysis of this statute should focus on the driver's acts and not on speculation about whether he could have stopped if he had been sober. If the driver's conduct caused the injury, he commits the crime; if someone else's conduct caused the injury, he is not guilty. We see Ind.Code § 9-4-1-54(b)(2) [now re-enacted as § 9-11-2-4] as having two elements. The State need prove:

(1) That the defendant was driving while intoxicated, and

(2) That his act of doing so resulted in serious bodily injury to another person."

*Id.* at 154. In that case, the defendant claimed that his intoxication did not cause the accident. In language appropriate to the case at bar, the court further explained the issue of causation:

"This is not to say that a drunk driver who hits a child who has run out from between two parked cars is not entitled to ask a jury to find him not guilty because there is reasonable doubt whether he caused the collision. In fact, Micinski has made a similar argument: he asserts that the proof showed the fog and the victims may have caused the collision. The jury heard this argument and the evidence and found Micinski guilty. Our review of the evidence indicates they were entitled to do so."

*Id.*

In the case under consideration, the jury heard a plethora of evidence concerning causation. There was conflicting evidence on whether the victim was walking in the street. The jury also heard evidence of sunblindness and dart-out. Further, the state presented evidence that the defendant's blood-alcohol concentration was .21 percent. It was the province of the jury to resolve any conflicts in the evidence. This court will not reweigh the evidence. We hold that the jury was entitled to find that the defendant had driven under the influence and that she caused the death of the

child. As *Micinski* said, "It was not necessary to prove that [her] intoxication caused the accident, only that [*she*] caused the accident." *Id.* (emphasis in original). Therefore, we reject the defendant's claim of insufficient evidence.

*Issue Three*

 The defendant alleges that the trial court erred when it denied the following instruction, which the defendant tendered.

"The defense of accident has been raised as an issue in this case. In general, prohibited conduct may be excused when it is a result of accident. This defense contains three elements:

 a. The conduct must have been unintentional, or without unlawful intent or evil design on the part of the accused;

 b. The act resulting in injury must not have been an unlawful act;

 c. The act must not have been done recklessly, carelessly or in wanton disregard of the consequences. The State has the burden of disproving this defense beyond a reasonable doubt."

Record at 138. "Decisions concerning jury instructions lie within the discretion of the trial court and this Court will not reverse unless the error is such that, taken as a whole, the charge to the jury misstates the law or otherwise misleads the jury." *Travis v. State* (1986), Ind., 488 N.E.2d 342, 345. In the case under consideration, the tendered instruction misstated the law.

The defendant was sentenced for violating Ind.Code § 9–11–2–5.[1]

Nothing in the statutory provisions specifies a *mens rea* element. A person may be found guilty of operating a vehicle while intoxicated solely on the basis of the evidence which proves beyond a reasonable doubt that the person operated a vehicle in a state of intoxication. *Cf. Zimmerman v. State* (1984), Ind.App., 469 N.E.2d 11, 22. Since one of the elements in the tendered instruction said that the defense of acci-

dent was comprised of unintentional conduct, we hold that the instruction was an erroneous statement of the law. The State did not have to prove a *mens rea.*

 Even if the tendered instruction was a correct statement of the law, the trial court still would not have erred in denying it since the other instructions adequately informed the jury of the elements of the crime including causation. The instructions given did not limit the defendant from asserting that the child's death resulted from an accident, simple negligence, dartout or sunblindness. Thus, the denial of the tendered instruction still would have been proper.

*Issue Four*

 The Fifth Amendment to the United States Constitution provides: "No person ... shall be compelled in any criminal case to be a witness against himself...." This right against self-incrimination is made applicable to Indiana through the Fourteenth Amendment. The United States Supreme Court opined that "the constitutional foundation underlying the privilege is the respect a government—state or federal—must accord to the dignity and integrity of its citizens." *Miranda v. Arizona* (1966), 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed.2d 694, 715.

In *Miranda,* the Court discussed the protection of the privilege against the coercive pressures that law officers can impose upon a suspect during custodial interrogation. The Court held:

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person

---

1. "A person who violates section 1 or section 2 [9–11–2–1 or 9–11–2–2] of this chapter commits a class C felony if the crime results in the death of another person."

Ind. Code § 9–11–2–2 states, "A person who operates a vehicle while intoxicated commits a class A misdemeanor."

has been taken into custody or otherwise deprived of his freedom of action in any significant way."

*Id.* at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. The Court then enumerated the rights which are commonly known as *"Miranda* rights." If police interrogate a suspect in custody without informing of his *Miranda* rights, his replies cannot be offered to prove his guilt.

The defendant claims that the trial court erred when it denied her motions to suppress the results of field sobriety and breathalyzer tests and her written statement. She alleged that the police should have informed her of her *Miranda* rights prior to the three field sobriety tests and the breathalyzer. She also alleges that her written statement was not made voluntarily. We will address these issues separately.

At the outset of our discussion on the results of the field sobriety tests and breathalyzer test, we address the state's contention that the defendant was not "in custody." The state correctly cites the proposition that if a person is not "in custody," no *Miranda* rights are required. *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317. However, we are compelled to hold that the defendant was in custody at the time the tests were conducted.

The tests were performed at the roll call station. The police informed the defendant that she was not free to leave. Record at 546. "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Id.* at 442, 104 S.Ct. at 3152, 82 L.Ed.2d at 336. We hold that a reasonable person in the defendant's situation would have felt that he or she was in custody.

Despite the fact that the defendant was in custody, the results of the field sobriety and breathalyzer tests were properly admitted into evidence since they were not testimonial or communicative in nature. Two decades ago, the United States Supreme Court held that a blood-alcohol test was not testimonial. In *Schmerber v. Cal-*

*ifornia* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, a blood sample was taken from a suspect. Test results revealed that he was intoxicated. He claimed that the admission into evidence of the test results, *inter alia,* denied his privilege against self-incrimination. The Court held that the privilege against self-incrimination is inapplicable to a blood-alcohol test.

"[B]oth federal and state courts have usually held that it offers no protection against compulsion to submit to finger-printing, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

*Id.* at 764, 86 S.Ct. at 1832, 16 L.Ed.2d at 916 (footnote omitted). The Court concluded that the blood test evidence was admissible since "[n]ot even a shadow of testimonial compulsion or enforced communication by the accused was involved either in the extraction or in the chemical analysis." *Id.* at 765, 86 S.Ct. at 1832, 16 L.Ed.2d at 916.

We hold that *Schmerber's* rationale is applicable equally to blood tests, field sobriety tests, and breathalyzer tests. A learned commentator would apparently agree. "[T]he privilege [against self-incrimination] is limited to testimonial disclosures. It was directed at the employment of legal process to extract from *the person's own lips* an admission of guilt...." 8 *Wigmore on Evidence* § 2263 (McNaughton Rev.1961) (Emphasis added). Another court succinctly stated that "evidence which is 'testimonial' or 'communicative' is that which reveals the *subjective knowledge or thought processes* of the subject." *Attorney General v. Colleton* (1982), 387 Mass. 790, 796–97, 444 N.E.2d 915, 919 n. 6.

Our state supreme court followed *Schmerber* when holding that *Miranda*

warnings were not necessary prior to conducting field sobriety tests. In *Heichelbech v. State* (1972), 258 Ind. 334, 281 N.E.2d 102, the court, after quoting extensively from *Schmerber*, held as follows:

"We do not believe the evidence elicited by the tests given to Defendant could be regarded as anything but 'real or physical evidence' under the principles expressed in *Schmerber, supra,* and we hold that the failure to advise an accused, held in custody, of his Fifth Amendment rights does not preclude the utilization of real or physical evidence then obtained as opposed to that which may be directly or indirectly testimonial in character."

*Heichelbech,* at 340, 281 N.E.2d at 105. We see no reason why *Heichelbech* should not apply to breathalyzer tests as well as field sobriety tests. Neither type of test is testimonial or communicative; they are merely physical forms of evidence.

This court addressed a case even more analogous to the case under consideration than *Heichelbech.* In *Rowe v. State* (1973), 157 Ind.App. 283, 299 N.E.2d 852, *trans. denied,* the suspect was taken to the police station. Before being informed of his *Miranda* rights, the suspect performed various field sobriety tests and also submitted to a breathalyzer test. Relying on *Schmerber* and *Heichelbech,* Judge Robertson held that the test results were real or physical evidence so that the Fifth Amendment was not involved.

In addition to *Heichelbech* and *Rowe,* other Indiana cases support our view despite their factual distinguishability. The Indiana Supreme Court and this court have held the following cases to involve no testimonial or communicative evidence so that the privilege against self-incrimination was not violated: *Gillie v. State* (1984), Ind., 465 N.E.2d 1380 (hair samples); *Bivins v. State* (1982), Ind., 433 N.E.2d 387 (defendant putting on corduroy coat worn by perpetrator); *Clark v. State* (1982), Ind., 436 N.E.2d 779 (insertion of electrodes through nasopharyngeal passages); *Allen v. State* (1981), Ind., 428 N.E.2d 1237 (defendant ordered in court to speak the words used by perpetrator); *Frances v. State* (1974), 262 Ind. 353, 316 N.E.2d 364 (fingerprints); *Hollars v. State* (1972), 259 Ind. 229, 286 N.E.2d 166 (handwriting sample); *Springer v. State* (1978), 175 Ind.App. 400, 372 N.E.2d 466 (displaying defendant's hands to jury); *Ewing v. State* (1974), 160 Ind.App. 138, 310 N.E.2d 571 (in banc) (urinalysis); *Paschall v. State* (1972), 152 Ind. App. 408, 283 N.E.2d 801 (fingerprints). *Cf. Gibbs v. State* (1983), Ind.App., 444 N.E.2d 893 (no right to have attorney present for breathalyzer test), *trans. denied. Contra McDonald v. State* (1975), 164 Ind.App. 285, 328 N.E.2d 436 (polygraph test is testimonial, not physical). Other states have also held that field sobriety tests and/or breathalyzer tests are not within the privilege against self-incrimination. *E.g., State v. Theriault* (1984), 144 Ariz. 166, 696 P.2d 718; *State In The Interest of James C.F.* (1984), Del.Fam.Ct., 488 A.2d 118; *State v. Wyatt* (1984), Hawaii, 687 P.2d 544; *Commonwealth v. Brennan* (1982), 386 Mass. 772, 438 N.E.2d 60; *State v. Taylor* (1984), 199 N.J.Super. 339, 489 A.2d 720; *People v. Brockum* (1982), 88 A.D.2d 697, 451 N.Y.S.2d 326; *Growe v. State* (1984), Tex.App., 675 S.W.2d 564. These cases, along with the analogous Indiana cases, support our holding that the privilege against self-incrimination is not violated by field sobriety or breathalyzer tests. Thus, the trial court did not err in denying the defendant's motion to suppress the results of the field sobriety tests and breathalyzer test. The police officers did not have to inform her of her *Miranda* rights since such evidence was physical, not testimonial.

 In her motion to suppress, the defendant claimed that her written statement was not made voluntarily. In order to determine the admissibility of a criminal defendant's statement, the trial court must determine that the statement was given knowingly, intelligently and voluntarily. *Chambers v. State* (1979), 271 Ind. 357, 392 N.E.2d 1156. The issue of voluntariness is examined from a totality of the circum-

stances surrounding the interrogation in which the statement is given. *Bailey v. State* (1985), Ind., 473 N.E.2d 609.

In the case under consideration, the record adequately supports the conclusion that the defendant's written statement was voluntarily given. The interrogating officer read each of her *Miranda* rights to her from a form. The officer paused and then asked if she understood each of her rights. After the defendant expressed her understanding, she executed a rights waiver form. Subsequently, she answered the police officer's questions. After the officer prepared a four page, typewritten statement, the defendant signed each page after reading the statement. In light of these circumstances, we hold that the trial court properly determined that the written statement was knowingly, intelligently and voluntarily given. Thus, the trial court did not err upon its denial of the defendant's motion to suppress the statement.

*Issue Five*

The defendant claims that the trial court abused its discretion when it imposed a five year term of imprisonment with three of the years suspended and imposed two years of probation after the sentence. The defendant alleged that the whole term should have been suspended or that probation was appropriate due to mitigating circumstances.

The defendant concedes, as she must, that sentencing is a matter committed to the sound discretion of the trial court and will be set aside or modified only when it is manifestly unreasonable. *Scruggs v. State* (1986), Ind., 489 N.E.2d 935, 938. To be "manifestly unreasonable" the sentence must be such that no reasonable person would find it appropriate for the offense and the offender. *Minneman v. State* (1984), Ind., 466 N.E.2d 438, 442, *cert. denied*, 470 U.S. 1030, 105 S.Ct. 1402, 84 L.Ed.2d 789.

A review of the sentence reveals that it is not manifestly unreasonable. The presumptive sentence for a class C felony is five years. Indiana Code section 35–50–2–6. A trial court has discretion in the finding of mitigating circumstances. *Sylvester v. State* (1985), Ind., 484 N.E.2d 1, 3. Here, the trial court did consider mitigating circumstances and accordingly suspended three years of the sentence. The defendant cannot claim that the trial court should have suspended the entire sentence since that issue was discretionary with the trial court.

The trial court also has discretion in granting probation and setting the terms thereof. *State ex rel. Abel v. Vigo Circuit Court* (1984), Ind., 462 N.E.2d 61. Since the defendant had no right to probation, she cannot say that the trial court erred when it refused to grant probation in lieu of a prison sentence. We find no error whatsoever in the trial court's sentencing, especially since the defendant is directly responsible for the death of an innocent child.

Affirmed.

ROBERTSON, P.J., and NEAL, J., concur.