180 N.J. Super. 544 (1981)
435 A.2d 1179
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN H. HANEMANN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1981.
Decided September 23, 1981.
*546 Before Judges ALLCORN, GEORGE B. FRANCIS and MORTON I. GREENBERG.
Dennis Drazin argued the cause for appellant (Drazin & Warshaw, attorneys; Thomas J. DiChiara, on the brief).
Mark P. Stalford, Assistant Monmouth County Prosecutor, argued the cause for respondent (Alexander D. Lehrer, Monmouth County Prosecutor, attorney).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
This matter comes before us on an appeal from the Superior Court, Law Division, Monmouth County, convicting defendant following his conviction entered in the Municipal Court of the Township of Middletown for certain traffic offenses. The trial in the Law Division was de novo on the record made in the municipal court. Thus the facts as set forth herein are derived from the municipal court trial.
*547 At about 2:30 a.m. on June 6, 1979 patrolman Michael Hoydis of the Middletown Township police department was investigating an automobile accident. He found an empty vehicle overturned in a public road in the Township of Middletown. There was no apparent driver or occupant in the area. The vehicle was extensively damaged. The windows were broken and there was blood on the driver's seat. Investigation revealed that the vehicle was registered to defendant, a resident of Fair Haven. Hoydis and a Fair Haven police officer, Sergeant Robert O'Neil, went to defendant's residence about 4 a.m. They were admitted to defendant's house by his wife. A few minutes later defendant appeared. Hoydis noted that defendant was cut and bleeding from his knees down. There were flakes of glass in his beard. He appeared to be intoxicated. Defendant explained that he had driven the car earlier to a tavern and left the car there and walked home because he was "too drunk to drive it home." He stated that he had cut his leg working on his swimming pool in the afternoon and that he must have tripped on a curb on the way home in the evening.
The police understandably were not satisfied with defendant's explanation. Defendant was accordingly arrested and then requested by the police to take a breathalyzer test to determine the content of alcohol in his blood. See N.J.S.A. 39:4-50.2. Defendant refused to take the examination. Defendant was subsequently charged in the Middletown Municipal Court with driving under the influence of intoxicating liquors, N.J.S.A. 39:4-50, leaving the scene of an accident, N.J.S.A. 39:4-129 and failure to report an accident, N.J.S.A. 39:4-130. Additionally, Patrolman Hoydis notified the Director of the Division of Motor Vehicles of defendant's refusal to take the test. This notification was required by N.J.S.A. 39:4-50.4, which provides that if an "operator" of a motor vehicle, after being arrested for violation of N.J.S.A. 39:4-50, refuses to submit to a chemical test to determine the content of alcohol in his blood, the arresting officer shall cause to be delivered to the Director a sworn report of such refusal specifying the circumstances surrounding *548 the arrest and the grounds upon which the officer had concluded that he was violating N.J.S.A. 39:4-50. N.J.S.A. 39:4-50.4 provides that if the Director determines that the officer acted in conformity with N.J.S.A. 35:4-50.1 et seq., he shall suspend the operator's driver's license unless the operator requests a hearing. If the operator requests a hearing, the Director then determines at the hearing "whether the arresting officer had reasonable grounds to believe the person had been driving ... while under the influence of intoxicating liquor, whether the person was placed under arrest, and whether he refused to submit to the test upon request of the officer." If these issues are determined adversely to the operator his license is suspended.
Defendant requested a hearing, which was then held on December 3, 1979 by an administrative law judge prior to the municipal court trials for the traffic offenses. Patrolman Hoydis was the only witness at the hearing in support of the suspension notice. He related most of the testimony later given in the municipal court. Defendant rested without testifying or presenting other witnesses. The judge reserved decision. In a written "initial decision" dated December 23, 1979 he made a recommended decision to the Director of the Division of Motor Vehicles.[1] In his decision he related that the issues were "whether the arresting officer had reasonable grounds to believe that John H. Hanemann had been driving ... while under the influence of intoxicating liquor," whether he was arrested and whether he refused to submit to a breathalyzer. He then recited the evidence at length. Ultimately he reached the following conclusion:
Based on the foregoing, I FIND that reasonable grounds to believe that John J. Hanemann had been driving, or was in actual physical control of a motor vehicle on the public highways of this State, has not been established by a preponderance of the credible evidence of record. On the contrary, the record fails to establish a nexus between the accident and Mr. Hanemann's operation of the *549 subject vehicle. A period of two hours had elapsed between the time that the arresting officer arrived at the scene of the accident and his first contact with the licensee. There were no witnesses to the accident. Furthermore, the licensee told the officer that he arrived home at 2:00 a.m., approximately one-half hour before the accident. This story was apparently corroborated by a third party, as the officer admitted on cross-examination. The licensee also told the officer that he was not driving.

In re Emberton, 109 N.J. Super., 211 (1970) required that reasonable grounds be assessed from the point of view of the arresting officer at the time he acted. Applying a reasonable nexus to the facts sub judice would, in the words of counsel, require a quantum leap from the point of the accident to the point of first contact with the licensee. The gap, in time and evidence, cannot be bridged by the evidence of record.
Thus, having concluded that reasonable grounds have not been established, it is ORDERED that this matter BE DISMISSED.

The Director adopted this decision, which then became final.[2]
The matter then came on for trial in the municipal court on February 14, 1980. Defendant was represented by counsel.[3] Insofar as the transcript reveals, it was not urged to the municipal judge that by application of principles of res judicata, collateral estoppel or comity that the proceedings before the administrative law judge in any way were dispositive of the case. Instead, the case was tried on the merits. Patrolman Hoydis again testified for the State. Additionally, Sergeant O'Neil of the Fair Haven police department testified he accompanied Hoydis to defendant's house when defendant was arrested. In harmony with the procedure followed by defendant before the administrative law judge, defendant neither testified nor presented witnesses. The municipal judge found defendant guilty of all three charges but merged the charge for failure to report into leaving the scene of the accident.
Defendant appealed from the municipal court to the Superior Court, Law Division, Monmouth County. Simultaneously he *550 moved for a new trial in the municipal court. The motion for a new trial had annexed to it an affidavit of municipal court trial counsel dated February 22, 1980. It recites that at the time of the trial, February 14, 1980, "your affiant was unaware of the existence of a witness, one Scott Bradley of the Rumson Police Department. I have recently discovered his existence as a witness. I spoke with Mr. Bradley on February 21, 1980 and he advises that he saw a car very similar to, if not identical with, the Hanemann vehicle at What's Your Beef in Rumson at a time after the car was alleged to have been stolen." The significance of this testimony was not explained in the affidavit. But it obviously related to Patrolman Hoydis' municipal court testimony in which he stated that at about 3:30 a.m. defendant's wife reported the car stolen. The inference which defendant hoped to have drawn was that in fact the car was turned over by a thief. On February 28, 1980 the municipal court judge, apparently without hearing argument, granted a new trial. Defendant's brief recites that "[b]ased upon the order of February 28, 1980, the Notice of Appeal was formerly [sic] withdrawn by appellant."[4]
On March 28, 1980 the municipal judge by letter advised defendant's counsel that he did not have jurisdiction to grant a new trial. A further hearing was then held on April 17, 1980 in the municipal court. The judge there adhered to his decision not to grant a new trial. But he signed an order on April 17, 1980 extending defendant's time to appeal by ten days. By a notice of appeal dated April 23, 1980 defendant again appealed from his judgment of convictions to the Law Division. Additionally, he appealed from the order denying a new trial. He was again found guilty in the Law Division. From those convictions he appeals to his court.
On this appeal defendant raises the following points:

*551 (1) Under the doctrines of collateral estoppel and/or res judicata, the municipal court should have been barred from seeking a contrary fact finding as to the issue of whether or not the appellant was driving his vehicle while intoxicated.[5]
(2) There is insufficient proof to show operation of the vehicle by the appellant, and therefore, the charges against him must be dismissed.
(3) Judge Horan erred when he unilaterally vacated his own grant of a new trial and Judge Cunningham further erred when he would not permit counsel for appellant to expand upon the record with respect to its request for a new trial.
We see no merit to the contentions that the prosecutions were barred by res judicata or collateral estoppel. A careful reading of the decision of the administrative law judge reveals that he did not find that it had not been shown that defendant was driving. Rather he found that patrolman Hoydis did not have reasonable grounds to believe defendant had been driving. The administrative law judge made this clear by his statement that "In re Emberton, 109 N.J. Super. 211 (1970) required that reasonable grounds be assessed from the point of view of the arresting officer at the time he acted." The distinction we draw is not technical. While we have no doubt that if the judge had found as a fact that defendant was not the operator of the vehicle his license could not have been suspended for failure to take the test, that is because it is only an operator who impliedly consents to the test under N.J.S.A. 39:4-50.2. A person does not consent simply because he has a driver's license. But the Legislature did not expressly require an inquiry at the suspension hearing on the question of whether the respondent at the hearing was the operator. Rather, the test was the probable cause for the arresting officer to ask the respondent to take the test, for unless the officer had "reasonable grounds" to ask him to take it, then there could be no suspension. See N.J.S.A. 39:4-50.4. Here the administrative law judge did not make a finding that defendant was or was not driving the vehicle. *552 Such a finding would have been superfluous since Patrolman Hoydis did not have (in the administrative law judge's opinion) reasonable grounds to believe that defendant was operating the vehicle.
In the municipal court proceeding the issue was different. There defendant could be convicted of any of the three charges against him if the judge found that he was operating the vehicle. N.J.S.A. 39:4-50; N.J.S.A. 39:4-129; N.J.S.A. 39:4-130. There is no requirement that the arresting officer have had reasonable ground for belief that defendant was the operator. None of the sections precludes introduction of proof obtained from third parties after the arrest. The difference in issues precludes operation of the doctrine of collateral estoppel. The Supreme Court in State v. Ingenito, 87 N.J. 204, 209 (1981), indicated that collateral estoppel applies to bar relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action. The hearing before the administrative law judge simply did not result in a determination of whether defendant was driving the vehicle on June 6, 1979.
It is equally clear that operation of the principle of res judicata cannot assist defendant. As noted in Hackensack v. Winner, 162 N.J. Super. 1, 27-28 (App.Div. 1978), mod. on other grounds 82 N.J. 1 (1980): "res judicata as a principle of law bars a party from relitigating a second time what was previously fairly litigated and determined finally. The general requirements for the invocation of this principle are a final judgment by a court or tribunal of competent jurisdiction, identity of issues, parties and cause of action and thing sued for." Here the two actions were separate proceedings for different purposes. The administrative proceeding was simply to determine whether defendant had improperly refused to consent to a breathalyzer. See In re Ferris, 177 N.J. Super. 161 (App.Div. 1981). Thus, even an acquittal of defendant in the municipal court before the administrative proceeding would not have precluded a suspension of his license under N.J.S.A. 39:4-50.4. See Atkinson v. *553 Parsekian, 37 N.J. 143 (1962). By contrast, the municipal court proceeding was directed to a determination of whether defendant in fact was operating his vehicle while under the influence of intoxicating liquors, left the scene of an accident and failed to report an accident.[6]
The municipal court judge correctly vacated his order for a new trial. Defendant's appeal to the Superior Court deprived the municipal court of jurisdiction to grant a new trial. Kohn's Bakery, Inc. v. Terracciano, 147 N.J. Super. 582 (App. Div. 1977). While the dismissal of the appeal to the Superior Court may have revested the municipal court with jurisdiction to grant a new trial, the moving papers gave no basis for such relief. Counsel's affidavit did not explain why Scott Bradley's testimony was not available from the date of the offense, June 6, 1979, until the date of the trial, February 14, 1980, but became known within eight days after the trial by February 22, 1980. A new trial should not have been granted absent a showing that the evidence was not discoverable by reasonable diligence before the trial. State v. Artis, 36 N.J. 538, 541 (1962); State v. Sanducci, 167 N.J. Super. 503, 508 (App. Div.), certif. den. 82 N.J. 263 (1979).
In any event, we do know that Patrolman Hoydis testified that defendant's wife had reported the car stolen. Surely she was available as a witness but yet was not called. In the municipal court defendant followed the procedure which had *554 been successful before the administrative law judge on the somewhat similar issue of the reasonableness of the patrolman's belief that he had operated the vehicle. The defense was not based on defendant's proofs. Rather, it was predicted upon the perceived inability of the State to establish that he was driving. While defendant was not successful in the municipal court or on appeal, it cannot be suggested that defendant's procedure was a bad one.
Defendant's other basis for a new trial was that operation had not been shown. This, of course, was simply a factual reargument. Determination of defendant's third point, discussed next, disposes of this contention.
Defendant's final argument that the proofs did not support a finding that he operated the vehicle is clearly without merit. R. 2:11-3(e)(2). A vehicle owned by him was found damaged. He had injuries completely consistent with the physical scene. He had glass on his face. He admitted that he had been in the vehicle as late as 1:00 a.m. The vehicle was found about one and one-half hours later. The evidence fully supports the conclusion that he was the operator of the vehicle at the time of the accident.
Affirmed.
NOTES
[1] N.J.S.A. 52:14F-7 provides that notwithstanding the establishment of the Office of Administrative Law an agency head may adopt, reject or modify the findings of fact and conclusion of law of an administrative law judge.
[2] We do not have a copy of the Director's determination but the parties are in agreement as to his holding.
[3] Not counsel who argued this appeal. Defendant had also been represented by counsel in the administrative proceeding. The State was represented in the municipal court but not before the administrative law judge.
[4] The "Notice of Withdrawal of Appeal" nevertheless was dated February 14, 1980. Obviously, it was not filed on that day.
[5] Defendant may have waived these contentions by failing to raise them in the municipal court. See R. 3:10-2; R. 7:4-2(e); State v. Parris, 175 N.J. Super. 603, 605-606 (App. Div. 1980). But we deal with the issues on the merits.
[6] Our disposition makes it unnecessary to consider whether in any event an administrative decision should be considered binding in a later judicial action. Here the earlier decision, even if rendered in a court, would not have precluded the prosecution. It is arguable, however, that if the administrative law judge found that the State did not prove by a preponderance of the evidence that a respondent was driving, that a fortiori he could not later be convicted in a municipal court for violation of N.J.S.A. 39:4-50 since such a conviction would require proof beyond a reasonable doubt. This would be distinguishable from the settled law that a prior acquittal for violation of N.J.S.A. 39:4-50 does not bar a later administrative suspension hearing under N.J.S.A. 39:4-50.4. See Strelecki v. Coan, 97 N.J. Super. 279 (App. Div. 1967). We do not reach this issue.