871 A.2d 664 (2005)
377 N.J. Super. 1
STATE of New Jersey, Plaintiff-Respondent,
v.
Donna EBERT, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 6, 2004.
Decided March 14, 2005.
*665 John Vincent Saykanic, Clifton, attorney for appellant.
Michael M. Rubbinaccio, Morris County Prosecutor, attorney for respondent (Joseph Connor, Jr., Assistant Prosecutor, on the brief).
Before Judges PETRELLA, LINTNER and PARKER.
The opinion of the court was delivered by
PARKER, J.A.D.
In this appeal, we once again address the issue of "operation" of a motor vehicle in the context of a conviction for driving while intoxicated (DWI), N.J.S.A. 39:4-50. Defendant, Donna Ebert, appeals from her *666 conviction for DWI and reckless driving, N.J.S.A. 39:4-96, after a trial de novo in Superior Court. We affirm.
At midnight on Friday, September 13, 2002, Officer Scott Welsch of the Denville Police Department responded to a report of a vehicle stolen from the parking lot at Charlie Brown's restaurant across the street from police headquarters. He was met by the restaurant manager in the parking lot and shortly thereafter by defendant, who told the officer that she could not find her BMW and believed it had been stolen. She had the car keys in her hand.
As the officer was speaking to defendant, he noticed that her speech was slurred and she was nervous and stuttering. After talking to her for a while, he smelled alcohol on her breath. The officer testified that when he asked defendant if she had anything to drink at Charlie Brown's, she said "she had nothing to drink since she was at the lot. And that she just came there to sleep off what she did have to drink. She felt [she] wasn't okay to drive." She told the officer that she went into the restaurant to make a phone call and when she came out her car was missing.
While the officer was talking with defendant, the restaurant manager found defendant's car on the other side of the building. As defendant was walking to her car, the officer noticed that she had a problem keeping her balance. He also noted that her car was parked in the middle of two parking spaces. The restaurant manager told the officer that defendant had nothing to drink in his bar.
Based upon his observations of defendant, her statements to him and the fact that she had the car keys in her hand when he first encountered her, the officer believed that defendant had driven to the parking lot in an intoxicated state. While the officer was administering the field sobriety tests, defendant claimed that her brother was with her and had been driving. The officer asked the manager to look in the restaurant for defendant's brother. At that point, defendant told the officer that she was alone and did not want to be charged with DWI. When defendant failed to successfully complete the field sobriety tests, the officer placed her under arrest, transported her to police headquarters and administered the breathalyzer test. Defendant scored .27% blood alcohol content (BAC) on two separate breathalyzer tests.
Prior to trial, defendant requested a hearing on the issues of whether she was "operating" a motor vehicle and whether her statements to the officer prior to her arrest should be suppressed pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The hearing occurred on December 10, 2002, after which the court determined that the officer's testimony was credible and that the State had met its burden to show that defendant was operating the vehicle. The suppression motion was also denied.
The trial proceeded on February 19, 2003, and at the close of the State's case, defendant again moved to dismiss on the ground that the State had not proven beyond a reasonable doubt that defendant was operating the vehicle at the time of her arrest. Defendant further moved to suppress her statements made to the officer, arguing that the officer suspected defendant of DWI as soon as he talked to her but did not provide her with Miranda warnings until after the field sobriety tests were administered. Both motions were denied.
The trial proceeded with defendant's testimony. She acknowledged that she had been drinking and that she was, in *667 fact, drunk that night. She testified about the events of that night as follows. After work, she planned to go out for a few drinks with some girlfriends. At 5:30 p.m., she parked her car at Charlie Brown's on Route 46 in Denville, where she was to meet a friend, Dana Spagnola, "[s]omeone that I was not supposed to be with.... Someone that my husband doesn't care too much for." They were out past defendant's curfew of 10:00 p.m., when Dana drove her back to Charlie Brown's. Defendant was trying to call her husband, Jimmy, to pick her up because she couldn't drive, but Dana's cell phone didn't work. Defendant's testimony as to whose cell phone she was attempting to use was inconsistent. At one point, she testified that it was her cell phone and in other instances, she testified that it was Dana's cell phone. Regardless of whose phone it was, Dana left and defendant walked into Charlie Brown's to make a phone call. She could not remember, however, whether she used a pay phone or a house phone. On direct examination, defendant testified that she "called the cops." On cross-examination, she testified that she called her husband but could not get through. When asked to identify the friends she claimed to be with that night, defendant stated that she did not want to get them involved. She denied telling the officer that she drove to the Charlie Brown's parking lot to sleep it off. She also denied that she had driven the car after she had been drinking that night.
After hearing the testimony and the arguments of counsel, Municipal Judge Arnold Miniman, reviewed defendant's testimony and found her not credible or believable. He found the officer credible, however, and determined that defendant's first admission to him "no matter how intoxicated she was... was the correct one. After having an opportunity to ... think things through she realized that she was in big trouble for DWI and changed her story. She did not come forward with anybody [who] drove her. All she has is her testimony, which is a day late and a dollar short to quote something somebody else might say." The judge noted that defendant's testimony regarding the cell phone was inconsistent, and that there was no reason for her to park her car improperly at 5:30 p.m. He concluded "that she was drinking and driving her motor vehicle that night," and found her guilty of DWI and reckless driving.
On de novo review, Superior Court Judge John Harper reviewed the record, found defendant guilty of both offenses and reduced the license suspension from eight to six months but assessed the remaining penalties imposed by the municipal court.
In this appeal, plaintiff argues:
POINT I
THE DEFENDANT'S ALLEGED STATEMENTS TO OFFICER WELSCH SHOULD HAVE BEEN SUPPRESSED AS HER MIRANDA RIGHTS, FIFTH AMENDMENT AND NEW JERSEY STATE CONSTITUTIONAL RIGHTS AND NEW JERSEY COMMON LAW PRIVILEGES AGAINST SELF-INCRIMINATION WERE VIOLATED; THE ADMISSION OF THE STATEMENTS CONSTITUTES REVERSIBLE ERROR
POINT II
A JUDGMENT OF ACQUITTAL IN FAVOR OF DEFENDANT SHOULD HAVE BEEN ENTERED AS TO THE DWI AND RECKLESS CHARGES AT THE END OF THE STATE'S CASE SINCE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THE OPERATION OF A MOTOR VEHICLE BY THE DEFENDANT *668 WHILE INTOXICATED CONTRARY TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION
POINT III
A JUDGMENT OF ACQUITTAL IN FAVOR OF DEFENDANT SHOULD HAVE BEEN ENTERED AS TO THE DWI AND RECKLESS CHARGES AFTER THE DEFENDANT TESTIFIED SINCE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THE OPERATION OF A MOTOR VEHICLE BY THE DEFENDANT WHILE INTOXICATED CONTRARY TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION
POINT IV
THE DEFENDANT'S CONVICTION IS AGAINST THE WEIGHT OF THE EVIDENCE AND THE STATE FAILED TO ESTABLISH DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT CONTRARY TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION
POINT V
THE DEFENDANT'S CONVICTION MUST BE REVERSED SINCE THE MUNICIPAL JUDGE IMPERMISSIBLY SHIFTED THE BURDEN OF PROOF IN HIS DECISION IN VIOLATION OF DEFENDANT'S FIFTH AND SIXTH AMENDMENT RIGHT TO A FAIR TRIAL, AND FOURTEENTH AMENDMENT DUE PROCESS CONSTITUTIONAL RIGHTS

I
Our standard of review of a de novo verdict after a municipal court trial is to "determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record," considering the proofs as a whole. State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). We defer to the municipal court's credibility findings that are "often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." State v. Locurto, 157 N.J. 463, 474, 724 A.2d 234 (1999) (citing State v. Jamerson, 153 N.J. 318, 341, 708 A.2d 1183 (1998); Dolson v. Anastasia, 55 N.J. 2, 7, 258 A.2d 706 (1969); Johnson, supra, 42 N.J. at 161, 199 A.2d 809). Moreover, when the Municipal Court and the Superior Court "have entered concurrent judgments on purely factual issues," we will not disturb those findings "absent a very obvious and exceptional showing of error." Locurto, supra, 157 N.J. at 474, 724 A.2d 234. We are bound by the trial court's findings of fact even though we may have reached a different conclusion, unless we are "thoroughly satisfied that the finding is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction." Johnson, supra, 42 N.J. at 162, 199 A.2d 809.

II
Plaintiff initially argues that her Miranda rights were violated by the admission into evidence of her statements to the police officer. She maintains that she was "in custody" from her first encounter with the officer because he immediately suspected that she was drunk and that he should have provided her with Miranda warnings before she made any incriminating statements.
Miranda warnings are required only when a person is subject to "custodial interrogation." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. "General on-the-scene questioning as to facts surrounding a *669 crime or other general questioning of citizens in the fact-finding process" is not subject to Miranda warnings. Id. at 477, 86 S.Ct. at 1629, 16 L.Ed.2d at 725; State v. Gosser, 50 N.J. 438, 446, 236 A.2d 377 (1967) (finding that Miranda did not apply when a police officer, responding to a call, asked the defendant what happened and the defendant responded that he killed his wife), cert. denied, 390 U.S. 1035, 88 S.Ct. 1434, 20 L.Ed.2d 295 (1968); State v. Smith, 307 N.J.Super. 1, 9, 704 A.2d 73 (App.Div.1997) (finding that Miranda does not apply during initial investigative procedures), certif. denied, 153 N.J. 216, 708 A.2d 67 (1998). We have previously held that a DWI suspect is not entitled to Miranda warnings prior to administration of field sobriety tests. State v. Green, 209 N.J.Super. 347, 350, 507 A.2d 743 (App.Div.1986); State v. Weber, 220 N.J.Super. 420, 424, 532 A.2d 733 (App.Div.), certif. denied, 109 N.J. 39, 532 A.2d 1107 (1987). In Berkemer v. McCarty, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 336 (1984), the United States Supreme Court held that a police officer asking a defendant a modest number of questions and requesting the defendant to perform a field sobriety test in a public place "cannot fairly be characterized as the functional equivalent of formal arrest." Moreover, in Green, we noted that evidence relating to defendant's field sobriety and breathalyzer tests are admissible in the absence of Miranda warnings because they are non-testimonial in nature. 209 N.J.Super. at 352, 507 A.2d 743.
Here, it is clear that the officer was undertaking an initial investigation when he was called to the scene because defendant believed her car had been stolen. Although he suspected that she had been drinking when he smelled alcohol on her breath during his conversation with her, the officer did not place defendant under arrest until after her car was located, he observed her difficulty walking and administered the field sobriety tests.
Miranda did not apply to the preliminary questions asked by the officer. Defendant's statements that she had been drinking, that she was drunk, and that she had driven to the parking lot intending to sleep it off, were all admissible.

III
In Points II, III and IV, defendant argues essentially that the State did not prove beyond a reasonable doubt that defendant was "operating" a motor vehicle in an intoxicated state because (1) no one observed her drive; (2) there is no circumstantial or direct evidence that she drove, except for her alleged admission; (3) she was in a highly intoxicated state rendering her statement to the officer inherently suspect; (4) she was confused and disoriented when questioned by Officer Welsch; and (5) she told the officer that she had not driven to Charlie Brown's.
Clearly, the State has the burden of proving beyond a reasonable doubt that a defendant was driving while intoxicated. State v. Grant, 196 N.J.Super. 470, 477, 483 A.2d 411 (App.Div.1984). N.J.S.A. 39:4-50 specifically applies to "a person who operates a motor vehicle while under the influence of intoxicating liquor...." (Emphasis added). The term "operate" must be given broad construction. State v. Morris, 262 N.J.Super. 413, 417, 621 A.2d 74 (App.Div.1993). Actual operation is not required to satisfy the element. Ibid.; State v. Sweeney, 40 N.J. 359, 360-61, 192 A.2d 573 (1963). "Operation may be proved by any direct or circumstantial evidence  as long as it is competent and meets the requisite standards of proof." State v. George, 257 N.J.Super. 493, 497, 608 A.2d 957 (App.Div.1992).
*670 "Operation" may be proved by actual observation of the defendant driving while intoxicated, State v. Prociuk, 145 N.J.Super. 570, 573, 368 A.2d 436 (Law Div.1976); by observation of the defendant in or out of the vehicle under circumstances indicating that the defendant had been driving while intoxicated, State v. Mulcahy, 107 N.J. 467, 476, 527 A.2d 368 (1987); Morris, supra, 262 N.J.Super. at 419-20, 621 A.2d 74; State v. Sweeney, 77 N.J.Super. 512, 521, 187 A.2d 39 (App.Div.1962); State v. Witter, 33 N.J.Super. 1, 5-7, 108 A.2d 862 (App.Div.1954); or by defendant's admission, State v. Hanemann, 180 N.J.Super. 544, 547, 435 A.2d 1179 (App.Div.) (affirming defendant's conviction based upon his admission that he had been driving earlier that night after the police found his empty overturned vehicle on the highway), certif. denied, 88 N.J. 506, 443 A.2d 717 (1981); State v. Dickens, 130 N.J.Super. 73, 78, 325 A.2d 353 (App.Div.1974) (affirming defendant's conviction based on his admission to drinking and driving when the police woke him up in his parked car on Interstate 287); State v. Guerrido, 60 N.J.Super. 505, 509, 159 A.2d 448 (App.Div.1960) (affirming defendant's conviction based on the testimony of two witnesses that he was intoxicated and his admission to police that he had been driving after his car was found "buried full length in some shrubbery and lilac bushes.")
Here, defendant's admissions to the officer on the night of September 13, 2002, the position of the vehicle in the parking lot, and the incredibility in her trial testimony supported the municipal court's finding that defendant drove to Charlie Brown's in an intoxicated state.

IV
Defendant maintains that the municipal judge improperly shifted the burden of proof to her when he commented on the absence of Dana Spagnola, defendant's purported alibi witness. We disagree. It is obvious from the record that the municipal judge was commenting on defendant's credibility when he noted that she failed to produce Ms. Spagnola to corroborate her testimony.
Moreover, under certain circumstances an adverse inference may be drawn from a defendant's failure to produce a witness.
Generally, failure of a party to produce before a trial tribunal proof which, it appears, would serve to elucidate the facts in issue, raises a natural inference that the party so failing fears exposure of those facts would be unfavorable to [her]. But such an inference cannot arise except upon certain conditions and the inference is always open to destruction by explanation of circumstances which make some other hypothesis a more natural one than the party's fear of exposure.
[State v. Clawans, 38 N.J. 162, 170-71, 183 A.2d 77 (1962) (citation omitted).]
"For an inference to be drawn from the nonproduction of a witness[,] it must appear that the person was within the power of the [defendant] to produce and that [her] testimony would have been superior to that already utilized in respect to the fact to be proved." Id. at 171, 183 A.2d 77. In her testimony, defendant stated that she did not wish to call Ms. Spagnola or any of the other people she claimed to be with that night because she did not want to get them involved. Thus, even if the municipal judge had drawn an adverse inference from defendant's failure to produce Ms. Spagnola as a witness, the inference was permissible under the circumstances presented.

*671 V
Finally, defendant argues that there was insufficient proof to support her conviction for reckless driving, since there was no indication of the speed at which she was traveling or that she had endangered people or property. "Intoxication in combination with other evidence or standing alone may satisfy the recklessness element." State v. Stanton, 176 N.J. 75, 84, 820 A.2d 637, cert. denied, 540 U.S. 903, 124 S.Ct. 259, 157 L.Ed.2d 187 (2003). We are satisfied that defendant's .27% BAC, along with the fact she had driven to the parking lot of a restaurant on a major state highway, Route 46 in Denville, is sufficient to sustain her conviction for reckless driving.
Affirmed.