**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4605-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DAVID GUAMAN,

     Defendant-Appellant.

_____

> Argued September 13, 2018 – Decided October 9, 2018
>
> Before Judges Alvarez and Nugent.
>
> On appeal from Superior Court of New Jersey, Law Division, Passaic County, Municipal Appeal No. 6116.
>
> Dominique J. Carroll argued the cause for appellant (Kassem & Associates, PC, attorneys; Nabil N. Kassem and Dominique J. Carroll, on the brief).
>
> Marc A. Festa, Senior Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent; Marc A. Festa, of counsel and on the brief).

PER CURIAM

Following a trial de novo, a Law Division judge found defendant, David Guaman, guilty of driving while intoxicated (DWI), N.J.S.A. 39:4-50, failure to possess a motor vehicle registration certificate and failure to possess an insurance identification card, N.J.S.A. 39:3-29, and possessing an open alcoholic beverage container, N.J.S.A. 39:4-51(b). He appeals and argues:

> POINT I
> AS A MATTER OF LAW THE LOWER COURT ERRONEOUSLY DENIED [DEFENDANT'S] MOTION TO SUPPRESS HIS ALLEGED ORAL AND WRITTEN STATEMENTS DESPITE THE SAME BEING THE PRODUCT OF UNLAWFUL POLICE INTERROGATION (Raised Below).
>
> POINT II
> AS A MATTER OF LAW THE LOWER COURT ERRONEOUSLY DENIED [DEFENDANT'S] MOTION TO SUPPRESS AS THE STATE LACKED PROBABLE CAUSE TO PLACE [DEFENDANT] UNDER ARREST (Raised Below).
>
> POINT III
> AS A MATTER OF LAW THE LOWER COURT ERRONEOUSLY DENIED [DEFENDANT'S] RECUSAL MOTION (Raised Below).
>
> POINT IV
> AS A MATTER OF LAW [DEFENDANT'S] CONVICTIONS MUST BE OVERTURNED BASED UPON PROSECUTORIAL MISCONDUCT (Raised Below).

POINT V
AS A MATTER OF LAW THE LOWER COURT
ERRONEOUSLY DENIED [DEFENDANT'S]
MOTION TO SUPPRESS THE UNRELIABLE
RESULTS OF THE ALCOTEST (Raised Below).

Finding no merit in these arguments, we affirm.

This action's lengthy procedural began on a Sunday morning in June 2015 when Wayne Township police issued traffic summonses to defendant for DWI and the other violations we have previously enumerated. Following defendant's arraignment and several pre-trial conferences, a December 2015 trial date was adjourned due to defense counsel's illness. Defendant filed a suppression motion, which the Judge of Municipal Court (JMC) heard on January 8 and July 8, 2016. The January 8 hearing was adjourned so the State could attempt to locate the recording of a cellular phone call a private citizen made to the New Jersey State Police on the morning of defendant's arrest.

On the date scheduled for resumption of the suppression hearing, defense counsel, after waiting in court approximately three hours, left to respond to a medical emergency involving a sibling. The JMC subsequently required that he provide proof of the medical emergency. This was not the first time the JMC had required verification of other events from defense counsel. Defense counsel had previously requested an adjournment on the basis he was scheduled to begin

a trial in Superior Court.  The JMC contacted counsel's office and ordered office personnel to provide him with the name and phone number of the Superior Court judge.

Questioning the JMC's impartiality in light of his demand for verification in each instance, defendant filed a motion seeking the JMC's recusal.  The JMC denied the motion.

The hearing on defendant's suppression motion continued on July 8, 2016, and concluded on September 30, 2016.  The JMC denied the motion. Trial commenced the same day and concluded on January 25, 2017.  The JMC convicted defendant of all charges and imposed sanctions.

Defendant appealed to the Law Division.  The Law Division judge denied defendant's suppression motion and found defendant guilty of the four motor vehicle offenses.  For the DWI offense, the judge revoked defendant's driving privileges for seven months and ordered defendant to install and maintain an ignition interlock device for six months following reinstatement of his driving privileges.  The judge also ordered defendant to attend an Intoxicated Driver Resource Center for twelve hours.  The judge imposed appropriate fines, penalties, assessments, and costs.  The judge merged the failure to possess a registration violation into the failure to possess an insurance card and for the

A-4605-16T3

latter imposed a $156 fine and $32 in costs. For possessing on open alcoholic beverage container, the judge imposed a fine of $206 and court costs of $32.

The State presented two witnesses at the suppression motion: a truck driver and Wayne Township Patrolman Gerard Venezia. On the morning police arrested defendant, the truck driver was driving westbound on Route 80, near Woodland Park, at approximately five o'clock, when he first saw defendant, who was also driving westbound on Route 80. The truck driver observed defendant driving well below the speed limit, braking heavily, and continually swerving back and forth across the three westbound traffic lanes. Defendant had one near miss with another vehicle. The truck driver reduced his speed, activated his hazard lights, and followed defendant onto Route 23 North. According to the truck driver, defendant continued to operate his car in the same manner, swerving across the left and right lanes, nearly missing the divider a few times. Defendant finally turned into the parking lot of a liquor store, where he parked, made a few movements, and then slumped over to the passenger side of the car. When that happened, the lights on defendant's car were off, the engine was not running, and no music was coming from the car.

The truck driver estimated he followed defendant for approximately twenty to twenty-five minutes. During that time, the truck driver used his

5

cellular phone to telephone the New Jersey State Police. The recording of the call was played at trial. In the recording, the truck driver reported that as he drove westbound on Route 80, "coming up to Smallwood Road," he observed a "late-model blue car" and its driver was "out of control." In response to a dispatcher's question, the truck driver reported defendant driving an Acura TSX with a Maryland license plate number.

Shortly after the truck driver followed defendant into the liquor store parking lot, Wayne Township Patrolman Gerard Venezia arrived in response to a 5:37 a.m. dispatch of a motor vehicle operating in a careless manner and failing to maintain his lane of travel. The officer spoke with the truck driver, who informed the officer of the observations he had made of defendant on Routes 80 and 23. Officer Venezia walked over to defendant's car and observed defendant in the driver's seat, reclined backwards, snoring. The driver's side rear window was open. Defendant did not appear to be in medical distress.

The officer smelled a strong odor of alcohol coming from defendant's car. He observed open alcohol beverage containers in the backseat. After the truck driver confirmed there were no obstructions or debris in the roadway that would have made defendant swerve, the officer woke defendant and requested his

credentials. Defendant could not locate a driver's license, registration, or insurance identification card. The officer asked defendant to step out of the car.

Defendant explained that he was driving from Brooklyn to Pennsylvania to meet a customer. He said he owned his own contracting business. Officer Venezia detected a distinct odor of alcohol emanating from defendant's breath. Defendant's eyes were bloodshot, his eyelids were droopy, and he slurred his speech. In response to the officer's question, defendant said he had consumed one-half of a beer at a friend's home in Brooklyn.

Based upon what the truck driver told him and his observations of defendant, Officer Venezia attempted to administer two field sobriety tests: the "walk and turn" test and the "one-leg stand" test. The parking lot was a good place for the former, because defendant could perform in on the lines dividing the parking spaces. Also, the parking lot was flat and free of debris. The weather was clear and warm.

Officer Venezia provided detailed instructions on how to perform each test. Defendant confirmed he had no injuries and was able to perform the tests. However, he did not do so. He did not follow instructions on the walk and turn test. In fact, he started doing the test while the officer was giving instructions.

When defendant attempted the one-leg stand test, he was unsteady and

A-4605-16T3

lost his balance. He could not lift his foot more than approximately two inches. He could not maintain the position for the required count.

Based upon the truck driver's statement and the totality of Officer Venezia's observations, the officer placed defendant under arrest.

The JMC denied defendant's suppression motion and the parties proceeded to trial. The truck driver and Officer Venezia testified to substantially the same facts they had recounted during the hearing on the suppression motion.

Officer Venezia added that when he asked defendant for his driving credentials, defendant's hand motions and movements were fumbling and slow. Outside of the car, defendant was unable to walk, that is, he was swaying and grasping for support. His legs sagged, he staggered, and he moved in circles. He was unable to stand without leaning on something for balance.

After placing defendant under arrest, Officer Venezia transported him to a State Police barracks so that defendant could give a breath sample for an Alcotest. Upon their arrival, Officer Venezia informed defendant of his Miranda[1] rights and completed a Miranda waiver. The officer then completed a Drinking and Driving report and an incident report. The officer placed defendant in a holding area and "began a [twenty] minute observation period,"

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-4605-16T3

using a cell phone clock to measure twenty minutes. During the twenty-minute time interval, Officer Venezia continually watched to assure defendant did not burp, vomit, or place any foreign objects in his mouth. Upon completion of the twenty-minute observation period, Officer Venezia escorted defendant to the Alcotest room, where Officer Darren Williams administered the Alcotest.

Officer Williams, a certified Alcotest operator, detailed his background and then explained the procedures he utilized to prepare the Alcotest. He also testified about his instructions to defendant after reading defendant the New Jersey Attorney General standard statement form "word for word." After five attempts to provide proper samples, defendant provided two that were satisfactory. Each one produced an Alcotest reading of .19.

Defendant offered one witness at trial, Gilbert Snowden, a former New Jersey State Policeman who was an expert in breath testing devices and standard field sobriety tests. He had previously testified in thousands of cases throughout most municipalities in New Jersey, as well as in municipalities in New York and Pennsylvania.

Snowden had not only reviewed all the documentary evidence in the case, he was present in court when Officers Venezia and Williams testified. He had two criticisms of Officer Venezia's administration of the field sobriety tests.

First, Officer Venezia did not testify that during the walk and turn test he told defendant to watch his feet at all times. Similarly, on the one-leg stand test, the officer did not tell defendant to keep watching the raised foot. Snowden explained the reasons why those instructions could – but do not necessarily – compromise the reliability of the results.

Snowden also disagreed with the way Officer Venezia had scored the two tests, but conceded that the "decision point" – at which the point system indicated impairment – would have been the same. Snowden also acknowledged that based on the totality of circumstances, Officer Venezia had "more than enough probable cause" to arrest defendant.

Snowden had no criticism of the way Officer Williams prepared and administered the Alcotest. He also had no issue with the foundational documents. Nonetheless, he testified Officer Venezia's twenty-minute observation period of defendant should have been conducted in the Alcotest room. Snowden explained that when Officer Venezia escorted defendant to the Alcotest room, defendant could have burped quietly or placed something in his mouth.

Snowden also opined that at the inception of the twenty-minute observation period, Officer Venezia should have asked defendant if he had

anything in his mouth. If defendant had something in his mouth, the twenty-minute observation period would have been ineffective for assuring the alcohol test would not be affected by material in defendant's mouth.

The JMC found the truck driver and the police officers credible. Acknowledging Snowden's expertise, the JMC noted that even Snowden said there was more than sufficient probable cause to arrest defendant. The JMC found that Officer Venezia's testimony satisfied the twenty-minute observation period. He convicted defendant on all four summonses.

On the trial de novo, the Law Division judge also convicted defendant. Acknowledging inconsistencies in the truck driver's testimony, the judge was nonetheless persuaded by the consistency of the truck driver's recorded telephone call and the "core" of his testimony. Giving some deference to the JMC's credibility findings, but making his own independent findings, the Law Division judge found the truck driver and the officers credible. The judge denied defendant's suppression motion, disposed of his claim that the JMC should have recused himself, and convicted defendant. This appeal followed.

When a defendant appeals a conviction of a motor vehicle violation following a trial de novo, the scope of our review is both narrow and deferential. State v. Stas, 212 N.J. 37, 48-49 (2012). We will "uphold the factual findings

11

underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'"  State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)).  We "defer to trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record."  State v. Locurto, 157 N.J. 463, 474 (1999).  "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error."  Ibid.  In contrast, review of the trial court's conclusions of law is de novo.  State v. Watts, 223 N.J. 503, 516 (2015).

Applying these standards, we find no error in the trial court's denial of defendant's suppression motion.  Defendant argues his suppression motion should have been granted because Officer Venezia did not give him Miranda warnings before questioning him about driving the car and drinking.  He contends the Officer should have given Miranda warnings because he was "in custody" from his first waking encounter with Officer Venezia because he was not free to leave and the officer suspected he was under the influence of alcohol.

Miranda warnings are required only when a person is subject to "custodial interrogation." Miranda, 384 U.S. at 444. "'General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process' is not subject to Miranda warnings." State v. Ebert, 377 N.J. Super. 1, 9 (App. Div. 2005) (quoting Miranda, 384 U.S. at 477)); accord, State v. Weber, 220 N.J. Super. 420, 424 (App. Div. 1987). "We have previously held that a DWI suspect is not entitled to Miranda warnings prior to administration of field sobriety tests." Ebert, 377 N.J. Super. at 9 (citing State v. Green, 209 N.J. Super. 347, 350 (App. Div.1986)).

Defendant next argues that Officer Venezia did not have probable cause to arrest him. His argument is without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).

In his third point, defendant argues the JMC erred by denying defendant's recusal motion. Defendant argues the JMC should have recused himself for three reasons. First, the judge expressed an opinion on the truck driver's veracity before hearing all the evidence. Second, when defense counsel requested an adjournment because he was on trial in Superior Court, the JMC requested the name and phone number of the presiding Superior Court judge. Finally, when defense counsel left municipal court after waiting hours on a date scheduled for

13

resumption of the trial, the JMC requested documentation of the medical emergency concerning defense counsel's sibling.

In addressing the recusal motion, the JMC denied he had made any veracity determination in the context of sustaining defendant's repetitive questioning of a witness. The judge pointed out he could not do so, because such a determination could be made only at the conclusion of all the testimony, including the cross-examination of the specific witness involved.

Concerning defense counsel's anticipated trial of a case in the Law Division, the JMC explained that municipal courts are under a directive to accelerate DWI cases. When a potential conflict arises, a municipal court judge must attempt to "work through scheduling issues" to determine whether to adjourn a DWI matter. The judge explained this "is within the normal day-to-day operations of the Municipal Court." Additionally, the JMC pointed out the practice of cooperation "was helpful," as exemplified in this case, because it turned out the Law Division case "was not scheduled to go to trial and that it would not interfere with the proceedings in [defendant's DWI] case."

Finally, concerning the day defense counsel left municipal court before trial resumed, the JMC noted defense counsel did not address the court directly as to an emergency, "as is standard in a DWI matter." For that reason, the court

14

requested something in writing to document the reason for the adjournment. The court explained that "[i]t was not a requirement of a doctor's note, although the doctor's note was accepted by the [c]ourt as a sufficient reason for the case to be carried."

We agree defendant did not establish a sufficient reason for the JMC to recuse himself. A party may, "on motion made to the judge before trial or argument and stating the reasons therefore, . . . seek that judge's disqualification." R. 1:12-2. Causes for disqualification are enumerated in R. 1:12-1 and include "any . . . reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." R. 1:12-1(g).

Yet, "[i]t is improper for a judge to withdraw from a case upon a mere suggestion that he is disqualified 'unless the alleged cause of recusal is known by him to exist or is shown to be true in fact.'" Panitch v. Panitch, 339 N.J. Super. 63, 66-67 (2001) (quoting Hundred East Credit Corp. v. Schuster, 212 N.J. Super. 350, 358 (App. Div. 1986)). The decision to grant or deny a recusal motion "is, at least in the first instance, entrusted to the 'sound discretion' of the trial judge whose recusal is sought." Id. at 66 (citing Magill v. Casel, 238 N.J. Super. 57, 63 (App. Div. 1990)). Here, we find no abuse of discretion.

The JMC sustained an objection to defendant repetitively pursuing questions about the truck driver's ability to recall and estimate distances. In sustaining the objection, the judge commented defendant had already established the witness's inability to recall distances accurately. The JMC distinguished this inability from the truck driver's veracity. No objectively reasonable person could have construed the JMC's comments as a premature determination of the credibility of the witness's overall testimony. As the judge explained during the recusal motion, the witness had not completed testifying, so the judge made no such credibility determination. It was not objectively reasonable for the defendant to think otherwise. See DeNike v. Cupo, 196 N.J. 502, 517 (2008).

Nor were the JMC's requests for the name of the Superior Court judge before whom defense counsel was scheduled to appear and for documentation as to the medical emergency improper. Both requests implicated the JMC's obligation to administer efficiently the court's cases, particularly DWI cases, and to document reasons for adjournments. A litigant's wholly subjective belief about a judge's impartiality, based on nothing more than surmise and conjecture, is an inadequate ground for recusal.

Defendant's fourth and fifth arguments are without sufficient merit to warrant extended discussion. R. 2:11-3(e)(2). Defendant took umbrage with the prosecutor providing a witness, whose testimony had commenced, with a transcript or recording of the witness's telephone call to the New Jersey State Police. But defense counsel adeptly cross-examined the witness about the discrepancies between the witness's testimony and his statements in the recording. Moreover, the recording was admitted into evidence. Any error in providing the witness with a copy of the recording after his testimony had begun was at most harmless error. R. 2:10-2.

Defendant's final argument – that the Alcotest results should have been suppressed because Officer Venezia did not properly and adequately observe defendant for twenty minutes before its administration – boils down to a credibility determination. The trial court acted well within its discretion in determining from the direct and circumstantial evidence the State had fully complied with the twenty-minute observation requirement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4605-16T3