**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1939-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSEPH I. MORCOS,

    Defendant-Appellant.

_____

Submitted February 25, 2019 – Decided June 21, 2019

Before Judges Sabatino and Sumners.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Municipal Appeal No. 6149.

Ameri & Associates, LLC, attorneys for appellant (Dominick Succardi, of counsel and on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Robert John Wisse, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a trial de novo in the Law Division, defendant Joseph I. Morcos was convicted of driving while intoxicated (DWI) based upon a per se violation under N.J.S.A. 39:4-50, due to a .08% blood alcohol concentration (BAC). Defendant appeals arguing:

POINT I

THE TRIAL COURT ERRED BY FINDING THAT DEFENDANT OPERATED A VEHICLE BEYOND A REASONABLE DOUBT.

POINT II

THE TRIAL COURT ERRED BY FINDING PROBABLE CAUSE TO ARREST DEFENDANT.

POINT III

THE TRIAL COURT ERRED BY NOT SUPPRESSING THE ALCOTEST WHEN THERE WAS NOT A FULL [TWO] MINUTE LOCKOUT BETWEEN TESTS.

POINT IV

THE TRIAL COURT ERRED BY FINDING DEFENDANT GUILTY WHEN IT CANNOT BE PROVEN BEYOND A REASONABLE DOUBT THAT HIS BLOOD ALCOHOL CONCENTRATION LEVEL WAS AT OR ABOVE A .08%, DUE TO THE MARGIN OF ERROR AND UNCERTAINTY.

POINT V

THE TRIAL COURT SHOULD HAVE SUPPRESSED THE ALCOTEST BECAUSE NO RESULT WAS OBTAINED WITHIN A REASONABLE TIME OF ACTUAL OPERATION OF A MOTOR VEHICLE.

POINT VI

THE TRIAL COURT SHOULD HAVE SUPPRESSED THE ALCOTEST BECAUSE THE FOUNDATIONAL DOCUMENTS DID NOT LIST THE SERIAL NUMBER OF THE TEMPERATURE PROBE UTILIZED.

After reviewing the record in light of the contentions advanced on appeal and applicable law, we affirm.

I

We glean the following pertinent facts from defendant's suppression motion hearing, which included the testimony of North Haledon Sergeant Anthony Conforti, the parties' DWI experts, and the video and audio recorded from a motor vehicle recording device (MVR). Defendant sought to suppress the police stop and the admission of the .08% BAC Alcotest results.

On January 14, 2017, at approximately 3:55 a.m., Sgt. Conforti and his partner Officer Hagedorn,[1] responded to a radio dispatch of a suspicious vehicle

---

[1] Officer Hagedorn's first name is not disclosed in the record, and his name is also spelled in the record as "Hagedoorn."

parked on Darrow Drive. Upon arriving at the reported location, Sgt. Conforti saw a parked vehicle with its headlights on and engine running. A North Haledon municipal ordnance forbids on-street parking in that location between the hours of 2:00 a.m. to 6:00 a.m. The officers' entire interaction with defendant during the incident was recorded on the MVR.

Observing defendant sleeping in the driver's seat, the officers woke him up and questioned him about where he had come from. Defendant stated he was going to his home in Allendale after leaving his brother's birthday party in Wyckoff, when he became tired, pulled over and parked his car. In actuality, his brother lived in Wyckoff and the party was in North Haledon, about a half a mile away from where he parked.

Defendant reluctantly admitted to drinking one glass of wine at the party between 9:30 and 10:00 p.m. after Sgt. Conforti questioned him upon detecting an odor of alcohol on his breath. When asked if he knew where he was, defendant wrongly stated he was in Allendale. After initially stating he was not diabetic, defendant later claimed he was diabetic and explained his earlier denial was due to being confused when he woke-up. After defendant was administered and failed both the field sobriety tests and the horizontal gaze nystagmus (HGN)

A-1939-17T4

test, he was arrested and within an hour was given the Alcotest breathalyzer examination at the police station.

Sgt. Conforti, a certified Alcotest operator, performed the examination. At 4:19 a.m., he began the twenty-minute observation period of defendant without losing sight of him. During that period, defendant did not chew on anything, did not have anything in his mouth, and did not regurgitate, according to Sgt. Conforti. At 4:44 a.m., defendant gave his first breath sample. His second breath test occurred at 4:47 a.m. Both test results of .08% were entered into the Alcotest calculator. The State's expert opined: there was nothing improper about Sgt. Conforti's administration of the Alcotest, the serial number was not required to be on the foundational documents – Alcohol Influence Report (AIR), and the serial number was properly recorded during his biannual calibration of the Alcotest machine.

Contradicting the State's expert, defendant's expert opined that Sgt. Conforti failed to properly instruct defendant on how to perform the field sobriety tests; specifically the walk and turn test, as well as the one leg stand test. He claimed that the required two-minute interval for between the two breath tests was not followed. He also testified to the analytical uncertainty of a .08% reading and the general tolerances in the measurements conducted by the

Alcotest machine. Thus, he asserted that given the acceptable tolerance levels, the actual reading could be either higher or lower. The municipal court judge denied the suppression hearing. A week later, the parties stipulated to a trial from the testimony provided at the motion hearing. Based on the .08% BAC, the municipal court judge found defendant guilty of DWI under the per se prong of N.J.S.A. 39:4-50 and not guilty under the observation prong of N.J.S.A. 39:4-50.[2] Defendant appealed to the Law Division.

At trial de novo, Judge Ronald B. Sokalski found defendant guilty anew. He found that probable cause existed to arrest defendant based on the totality of the circumstances based upon the credibility of Sgt. Conforti's testimony, which was corroborated by the MVR.

In his comprehensive oral decision, the judge stated:

> 1) Defendant's car was parked on a street at 3:55 a.m. . . . with its motor running and headlights illuminated.
>
> 2) Defendant was found sitting in the driver's seat asleep.
>
> 3) Defendant when asked where he was stated Allendale where he lives.

---

[2] The municipal court found that the field sobriety tests were not properly given and that the HGN test could not be used to establish defendant was guilty of DWI.

A-1939-17T4

4) Defendant stated that he was coming from his brother's birthday in Wyckoff and going home to Allendale.

5) An odor of an alcoholic beverage detected on defendant's breath.

6) Defendant's admission to drinking alcohol one small glass of wine.  And --

7) Defendant's poor performance of the field sobriety test which clearly shows he was unable to maintain his balance.

Second, the judge found that the State proved that defendant operated his motor vehicle.  The judge reasoned that defendant was found asleep behind the wheel, engine running and headlights illuminated, with the odor of alcohol on his breath.  The judge determined defendant was driving his vehicle home when he pulled over and parked in North Haledon, believing that he had actually driven to Allendale.

Third, the judge found that the Alcotest was administered within a reasonable amount of time.  In weighing the respective experts' testimony, he rejected defendant's argument regarding the lack of a full two-minute period between the second breath test and the second control test  In reviewing the AIR,

A-1939-17T4

the judge found that the testing of the defendant in this case complied with the procedures set forth in Chun.[3]

Fourth, the judge determined the Alcotest results were not invalidated as a per se violation by the lack of the temperature probe serial number on the AIR. He reasoned that the temperature probe serial number on the Standard Solution Form was satisfactory.

Finally, the judge found no merit in defendant's argument regarding the analytical uncertainty of defendant's .08% BAC result. He determined the State's expert was credible; the foundation documents required under Chun were all properly submitted into evidence; and the twenty-minute required observation period was followed. He further found the Alcotest machine was in working order, the test was properly conducted, and thus the .08% reading was valid.

In accordance with N.J.S.A. 39:4-50(a), the judge suspended defendant's driving privileges for three months and imposed the appropriate fines and penalties. The judge denied defendant's request to stay the suspension of his driving privileges; thereby vacating the stay of sentence entered by the municipal court.

---

[3] State v. Chun, 194 N.J. 54 (2008).

## II

We begin with a review of the applicable legal principles that guide our analysis. Our assessment of the trial court's factual findings is limited to whether the conclusions of the Law Division judge "could reasonably have been reached on sufficient credible evidence present in the record." State v. Johnson, 42 N.J. 146, 162 (1964). Unlike the Law Division, which conducts a trial de novo on the record, Rule 3:23-8(a), we do not independently assess the evidence. State v. Locurto, 157 N.J. 463, 471 (1999). The rule of deference is more compelling where, such as here, the municipal and Law Division judges made concurrent findings. Id. at 474. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. (citing Midler v. Heinowitz, 10 N.J. 123, 128-29 (1952)). We owe no deference to the trial judge's legal conclusions, Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citing State v. Brown, 118 N.J. 595, 604 (1990)), and exercise plenary review of the trial court's legal conclusions that flow from established facts, State v. Handy, 206 N.J. 39, 45 (2011).

Review of a trial court's ruling on the admissibility of evidence is "'subject to limited appellate scrutiny.'" State v. Buckley, 216 N.J. 249, 260 (2013) (quoting State v. Buda, 195 N.J. 278, 294 (2008)). "We afford considerable deference to a trial court's findings based on the testimony of witnesses." Ibid. (citing State v. Elders, 192 N.J. 224, 244 (2007)). We will not reverse a trial court's evidentiary ruling absent an abuse of discretion. Buda, 195 N.J. at 294-95.

A defendant need not be seen driving a vehicle in order to be convicted of DWI. Driving a vehicle can be proven "by observation of the defendant in or out of the vehicle under circumstances indicating that the defendant had been driving while intoxicated[.]" State v. Ebert, 377 N.J. Super. 1, 11, (2005) (citations omitted).

To arrest a person for DWI, a police officer must have "reasonable grounds to believe" the person was driving a motor vehicle in violation of N.J.S.A. 39:4-50. State v. Moskal, 246 N.J. Super. 12, 21 (App. Div. 1991) (citation omitted). The State need only prove "by a fair preponderance of the evidence" that defendant was legally intoxicated and operating the vehicle to establish probable cause to arrest for DWI. Karins v. Atlantic City, 152 N.J. 532, 559 (1998) (citations omitted).

Alcotest results have been deemed scientifically reliable and are admissible to prove a per se violation of DWI. Chun, 194 N.J. at 66. As a pre-condition for admissibility of Alcotest results, the State must establish by clear and convincing evidence that: (1) the Alcotest was in working order and had been "inspected according to procedure"; (2) "the operator was certified"; and (3) the operator administered the test "according to official procedure." Chun, 194 N.J. at 134; see also State v. Ugrovics, 410 N.J. Super. 482, 489-90 (App. Div. 2009) (examining the application of Chun with respect to the twenty-minute waiting period required before collecting another breath sample in administering the Alcotest).

The third Chun factor, which defendant challenges, requires the Alcotest operator to "wait twenty minutes before collecting a sample to avoid overestimated readings due to residual effects of mouth alcohol[,]" and "observe the test subject for the required twenty-minute period of time to ensure that no alcohol has entered the person's mouth while he or she is awaiting the start of the testing sequence." Chun, 194 N.J. at 79. Once the requisite waiting period has elapsed, the testing process can begin. Ibid. First, the device automatically samples room air to check for contaminants; this is commonly known as the blank air test. Chun, 194 N.J. at 80. If the initial test is valid, the machine

11

performs the control test, which measures a standard alcohol solution. Ibid. If that test is also valid, that is, if the device accurately analyzes the standard solution, a second blank air test is performed, after which the operator can obtain a breath sample from a defendant. Ibid. After the defendant provides a sample, the device performs a third blank air test to purge the defendant's sample from the device, and then locks out for a two-minute period. Id. at 81. No less than two minutes thereafter, a second breath sample is taken from the defendant. Id. at 81.

Applying the above standards, we are satisfied that Judge Sokalski thoroughly reviewed the record and properly found there was sufficient credible evidence of probable cause to arrest defendant and that he was guilty of DWI based upon a .08% BAC. As the judge noted, the totality of circumstances demonstrated defendant was driving and he was intoxicated when doing so. His determination was supported by finding Sgt. Conforti gave credible testimony that he observed defendant continuously for twenty minutes before conducting the Alcotest, and that more than two minutes elapsed between the two breath tests conducted on defendant.

To the extent we have not specifically addressed arguments raised by defendant, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1939-17T4