Salem District Court
No. 6630

STATE OF NEW HAMPSHIRE v. LEONARD G. ARSENAULT

Carroll
No. 6802               SAME v. JOHN F. FARRELL

Carroll
No. 6803               SAME v. SAMUEL S. SNOW

Grafton
No. 6866               SAME v. ERIC D. LAHAR

March 31, 1975

*Warren B. Rudman,* attorney general, and *Robert V. Johnson II,* assistant attorney general *(Mr. Johnson* orally), for the State.

*John B. Ford,* by brief, for the defendant Arsenault.

*James J. Kalled,* by brief and orally, for the defendants Farrell and Snow.

*Stebbins & Bradley* and *Daniel J. Connolly (Mr. Connolly* orally) for the defendant Lahar.

LAMPRON, J. These four cases were consolidated on appeal. They raise the common issues of whether the evidence obtained from field sobriety tests performed at the request of a police officer by each defendant preceding his arrest for operating a motor vehicle on a public way while under the influence of intoxicating liquor (RSA 262-A:62 (Supp. 1973)) is competent, and whether it violates the defendant's privilege against self-incrimination in the State and Federal Constitutions.

In each case, the arresting officer observed the defendant's vehicle weaving from side to side or straddling a double yellow line as it proceeded along the highway; after stopping the defendant driver, the officer detected the odor of alcohol emanating from him. In addition Farrell had difficulty obtaining his license and registration from his wallet, and Lahar's speech was slurred. Upon request of the police officer each defendant performed certain field sobriety tests. The results being deemed unsatisfactory by the officer, each defendant was placed under arrest. Each agreed to submit to a breathalyzer test (RSA 262-A:69-a (Supp. 1973)), with the following blood alcoholic content found: Arsenault .11%, Farrell .12%, Snow .12%, Lahar .20%.

Arsenault moved during the course of his trial in the Salem District Court *(Sayer,* J.) that the results of the field tests and of the breathalyzer test be excluded. Before the trial was completed, the district court transferred to this court all questions of law raised by defendant's motion. Farrell and Snow were found guilty in the Wolfeboro District Court. On their appeals to the superior court, each moved before trial to suppress the results of the sobriety tests. Their exceptions to the denial, after hearings, of their motions were reserved and transferred by *Perkins,* J. Lahar was found guilty in the Lebanon District Court. Prior to trial on his appeal to the superior court, he also moved to suppress the results of the field tests. His motion was denied after a hearing by *Perkins,* J., and his exceptions reserved and transferred.

These field sobriety tests include a balance, walking, turning, finger-to-nose, and a coin-pick-up test. "[T]hese tests serve essentially to provide an extension of the number of different situations in which the defendant's behavior may be noted. They allow the officer to take notes, give ... [the trier] objective description of clinical symptoms, and add convincing detail to the stock description of slurred speech, staggering gait, fumbling with wallet, bloodshot

eyes, odor of alcohol, and disarray of clothing." Watts, *Some Observations on Police-Administered Tests for Intoxication,* 45 N.C.L. Rev. 34, 36 (1966). The defendants argue that the results of such tests are incompetent evidence. The reasons advanced are that they are without any scientific basis; they have no proven correlation to the blood alcohol level of the persons being tested; they have no established and quantifiable method of evaluation, so are purely subjective; and finally they are not a generally accepted and reliable method of ascertaining the information sought to be found.

It has been the law in this jurisdiction for more than a century that: "Intoxication is a fact open to the observation of every man; and no 'special skill or learning' is requisite to discern it." *State v. Pike,* 49 N.H. 399, 407 (1870). "[U]ntrained laymen . . . have always been permitted to testify as to intoxication on the basis of sight, smell, speech and locomotion." *State v. Roberts,* 102 N.H. 414, 416, 158 A.2d 458, 460 (1960). It is also a commonly recognized fact that the consumption of alcohol impairs coordination, judgment and alertness. However, the indicia of intoxication are not equally apparent in all individuals. "It is well known that persons of the same age and weight may show a remarkable variability in their response to alcoholic liquor." R. Donigan, Chemical Tests and the Law 287-90 (1966). In some cases it may be difficult to recognize intoxication or its degree by mere observation. J. Richardson, Modern Scientific Evidence § 13.3 (2d ed. 1974); B. Freeman, Drunk Driving Cases: Prosecution and Defense 206, 210 (1970).

The field sobriety tests are designed and administered to avoid the shortcomings of casual observation. 1 Am. J. Crim. L. 96 (1967). Since they consist of precise body movements, a greater degree of coordination is required than routine standing or walking. Thus they broaden the officer's observation of the defendant and enhance the basis and reliability of his opinion as to whether the driver's performance has been adversely affected by intoxicating liquor. C. McCormick *et al.,* Evidence § 209 (2d ed. 1972). Admittedly the results of the field sobriety tests do not possess the scientific reliability or the same degree of certitude attributed to the chemical analysis of the alcoholic blood content by a breathalyzer or other such methods. *See* R. Erwin, Defense of Drunk Driving Cases § 8.12 (3rd ed. 1974); 52 Cornell L. Q. 323, 324 (1967).

"In this [S]tate [however] evidence does not have to be infallible to be admissible. If it is of aid to a judge or jury, its deficiencies or weaknesses are a matter of defense which affect the weight of the evidence but does not determine its admissibility." *State v.*

*Roberts,* 102 N.H. 414, 416, 158 A.2d 458, 460 (1960); *State v. LaFountain,* 108 N.H. 219, 221, 231 A.2d 635, 637 (1967). We hold that in each of these cases the opinion of the police officer as to the intoxication of the defendant, and its basis, including the field sobriety tests administered before his arrest, are competent evidence even though they bear on a main issue, that is, whether the defendant was driving under the influence of intoxicating liquor. *Perreault v. Company,* 87 N.H. 306, 310, 179 A. 365, 368 (1935); C. McCormick, *supra* § 12.

Defendants also maintain that the field sobriety tests infringe on their privilege against self-incrimination. U.S. CONST. amend. V; N.H. CONST. pt. I, art. 15. Historically this privilege originated as a reaction to the practice in the early English courts of compelling a witness to be sworn and give testimony concerning his guilt. 8 J. Wigmore, Evidence § 2250 (McNaughton rev. 1961, Supp. 1972); C. McCormick *et al.,* Evidence §§ 114-17 (2d ed. 1972). "In the light of this history the textwriters and the overwhelming majority of the courts have limited the scope of the privilege to ... 'testimonial compulsion,' i.e., 'compulsion to do those things which a witness would by traditional judicial processes be required to do.'" *State v. King,* 44 N.J. 346, 357, 209 A.2d 110, 116 (1965). Under the fifth amendment of the Federal Constitution "the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature ...." *Schmerber v. California,* 384 U.S. 757, 761 (1966).

Defendants have adverted to a difference in the language of article 15, part 1 of our State constitution which reads: "No subject shall ... be compelled to accuse or furnish evidence against himself." It is commonly held that the "variety of constitutional or statutory phrasing neither enlarges nor narrows the scope of the privilege as developed in the common law." 8 J. Wigmore, *supra* § 2252, at 326. Sharing that view, this court has stated that the privilege under our State constitution is "one against testimonial compulsion only, and that it is inapplicable ... where the evidence is real rather than testimonial." *State v. Sturtevant,* 96 N.H. 99, 103, 70 A.2d 909, 911-12 (1950).

Accordingly under neither the Federal nor our State constitution does the privilege protect the accused from compulsion which makes him the source of real or physical evidence. Without violating this privilege, he can be subjected to the withdrawal of blood and the admission in evidence of the result of its analysis *(Schmerber*

*v. California,* 384 U.S. 757 (1966)); or required to wear a disguise and speak the words of the perpetrator of a crime *(United States v. Wade,* 388 U.S. 218 (1967)); or to submit a handwriting exemplar *(Gilbert v. California,* 388 U.S. 263 (1967)); or a voice exemplar *(United States v. Dionisio,* 410 U.S. 1 (1973)). Compelling a defendant to stand, to assume a position, to walk, or to make a particular gesture, as well as numerous other activities where the accused has been the source of real evidence or subjected to testing have also been found to be unprotected by that privilege. 3 F. Wharton, Criminal Evidence § 624, at 211-25 (13th ed. 1973, Supp. 1974).

The field sobriety tests challenged here are of a similar nature. They are premised upon the relationship between intoxication and the externally manifested loss of coordination which it causes. These tests do not seek to compel from the defendant any knowledge he might have *(Piqua v. Hinger,* 15 Ohio St. 2d 110, 238 N.E.2d 766 (1968)); nor do they involve the defendant's communicative faculties in any way. *State v. Faidley,* 202 Kan. 517, 450 P.2d 20 (1969). They only compel him to exhibit his physical characteristics of coordination. B. Freeman, Drunk Driving Cases: Prosecution and Defense 519, 537 (1970). Thus the field sobriety tests do not constitute testimonial compulsion but are merely a source of real or physical evidence and are not within the privilege against self-incrimination. Consequently the rule of *Miranda v. Arizona,* 384 U.S. 436 (1966), is not involved.

The evidence of the field sobriety tests is therefore competent and admissible. The cases of Farrell, Snow and Lahar are remanded to the superior court and the case of Arsenault is remanded to the Salem District Court.

*Exceptions overruled; remanded.*

All concurred.