209 N.J. Super. 347 (1986)
507 A.2d 743
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANDREW GREEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 25, 1986.
Decided April 16, 1986.
*348 Before Judges MICHELS, GAULKIN and DEIGHAN.
Robert B. Woods, attorney for appellant.
John A. Kaye, Monmouth County Prosecutor, attorney for respondent (James W. Kennedy, Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Andrew Green was found guilty in the Municipal Court of the Borough of Monmouth Beach of both operating a motor vehicle while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50 and careless driving in violation of N.J.S.A. 39:4-97. In imposing sentence, the Municipal Court Judge merged defendant's conviction for careless driving into his conviction for driving while under the influence of intoxicating liquor, suspended defendant's driving privileges for six months and fined him $250. Defendant appealed to the Law Division where, following a trial de novo on the record below, *349 defendant was again found guilty of violating N.J.S.A. 39:4-50 and the same sentence was imposed upon him.

I.
Defendant seeks a reversal of his conviction contending first that, under the holding of the United States Supreme Court in Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), testimony regarding statements made by him, as well as testimony relating to the results of his field sobriety and breathalyzer testing, should not have been admitted into evidence. Defendant argues essentially that the Berkemer decision is applicable in this case, as it sets forth "a framework upon which police officers are to act in the performance of their duties when they stop a proposed suspect in regard to a drunk driving violation." Relying upon this decision, defendant claims, among other things, that he should have been given Miranda warnings "at the time when he was detained pursuant to the [subject] traffic stop and thereafter subjected to treatment that rendered him in custody for all practical purposes." We disagree.
In Berkemer v. McCarty, supra, the Court considered two related questions. The first issue was whether its decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), should govern the admissibility of statements made during custodial interrogation by a suspect accused of a misdemeanor traffic offense. The second issue related to whether the roadside questioning of a motorist detained pursuant to a traffic stop should constitute custodial interrogation for purposes of applying the Miranda doctrine. In considering whether the Miranda doctrine should be applicable to the custodial questioning of suspects accused of misdemeanor traffic offenses, the court first noted that the Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." 468 U.S. at ___, 104 S.Ct. at 3144, 82 L.Ed.2d at 327 (citing U.S. Const., Amend. V). *350 Writing for the Berkemer Court, Justice Marshall reiterated the holding in Miranda v. Arizona, indicating that:
[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. [468 U.S. at ___, 104 S.Ct. at 3144-45, 82 L.Ed.2d at 327 (citing Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966) (Emphasis supplied)].
After applying the Miranda doctrine and considering the nature of misdemeanor traffic offenses, the Berkemer Court concluded that "a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in Miranda, regardless of the nature or severity of the offense of which he is suspected or for which he was arrested." 468 U.S. at ___, 104 S.Ct. at 3148, 82 L.Ed.2d at 331. (Footnote omitted and emphasis supplied). In so holding, the Court clearly found that the Miranda doctrine is applicable in situations where an individual is suspected of a misdemeanor traffic offense. However, the Court specifically limited the scope of its holding to misdemeanor traffic offenses where a suspect is subjected to custodial interrogation. There is no indication whatsoever in the Berkemer decision which supports defendant's contention that he was entitled to Miranda warnings before being subjected to field sobriety testing.
Moreover, the third portion of the Berkemer decision further limits the scope of the holding, as it relates to the roadside questioning of a motorist detained pursuant to a routine traffic stop. The Berkemer Court found that such questioning should not be considered to be "custodial interrogation" for Miranda purposes. 468 U.S. at ___, 104 S.Ct. at 3148, 82 L.Ed.2d at 331. Although acknowledging that "a traffic stop significantly curtails the `freedom of action' of the driver," 468 U.S. at ___, 104 S.Ct. at 3149, 82 L.Ed.2d at 332, the Court concluded that since such stops are presumptively temporary and brief and the atmosphere surrounding them is less "police dominated" than *351 that surrounding a typical Miranda interrogation, they do not exert upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination. The Berkemer Court thereupon rejected the contention that the mere initial stopping of a car may render an individual "in custody", holding that defendant therein was not taken into custody, for purposes of Miranda, until he was formally arrested. 468 U.S. at ___, 104 S.Ct. at 3151-52, 82 L.Ed.2d at 335-336. Neither holding of the Berkemer Court, therefore, supports defendant's assertion that he was entitled to Miranda warnings before performing the requested field sobriety tests.
Although defendant herein was stopped for a traffic offense, as was the defendant in Berkemer, this trial court did not consider any testimony which was the product of custodial interrogation. Consequently, defendant can not rely on Berkemer in asserting that his Miranda rights were violated. Furthermore, with respect to the applicability of Miranda warnings to the field sobriety testing, Berkemer provides no help to defendant since, although his freedom was impinged to some extent at this point, it was not "curtailed to a `degree associated with formal arrest.'" 468 U.S. at ___, 104 S.Ct. at 3151, 82 L.Ed.2d at 335 (citing California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3519-20, 77 L.Ed.2d 1275, 1279 (1983)).
In view of our holding that the principles enunciated in Berkemer v. McCarty do not apply here, we need not decide today whether that decision should be applied retroactively. See State v. Favoccia, 206 N.J. Super. 334, 335 (App.Div. 1985). But cf. State v. Adams, 200 N.J. Super. 385, 391 (App.Div. 1985) (holding that Berkemer was not to be applied retroactively and had no application to defendant's case).

II.
Entirely apart from the inapplicability of the Berkemer decision, there are additional valid reasons which support the *352 trial court's determination that evidence relating to defendant's field sobriety and breathalyzer testing was admissible. There can be no question that evidence of this type is nontestimonial in nature. Thus, the decision of the Court in Miranda v. Arizona, supra, is not applicable since it only addressed the Fifth Amendment's privilege against self-incrimination as it applied to testimonial evidence. However, in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Court specifically considered the applicability of Fifth Amendment safeguards to nontestimonial evidence. In determining whether the withdrawal of blood and the admission into evidence of a blood analysis would violate a defendant's constitutional privilege against self-incrimination, the Court noted that:
[h]istory and a long line of authorities in lower courts have consistently limited [the Fifth Amendment's] protection to situations in which the State seeks to submerge those values by obtaining the evidence against an accused through "the cruel, simple expedient of compelling it from his own mouth. ..." [Schmerber v. California, supra, 384 U.S. at 763, 86 S.Ct. at 1831, 16 L.Ed.2d at 915 (citing Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 694 (1966)) (Emphasis supplied)].
The Schmerber Court concluded that the Fifth Amendment privilege "protects an accused only from being compelled to testify against himself," 384 U.S. at 761, 86 S.Ct. at 1830, 16 L.Ed.2d at 914, specifically noting that:
it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. (Footnote omitted). The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling "communications" or "testimony," but that a compulsion which makes a suspect or accused the source of "real or physical evidence" does not violate it. [Id. at 764, 86 S.Ct. at 1832, 16 L.Ed.2d at 916 (Emphasis supplied)].
It is with these principles in mind that we must consider defendant's challenge to the admissibility of the field sobriety and breathalyzer testing results. It has been recognized that "field sobriety tests are designed and administered to avoid the shortcomings of casual observation." State v. Arsenault, 115 *353 N.H. 109, 111, 336 A.2d 244, 246 (Sup.Ct. 1975) (citing 1 Am.J. Crim.L. 96 (1967)).
They are premised upon the relationship between intoxication and the externally manifested loss of coordination which it causes. These tests do not seek to compel from the defendant any knowledge he might have (Citation omitted); nor do they involve defendant's communicative facilities in any way. (Citation omitted). They only compel him to exhibit his physical characteristics of coordination. (Citation omitted). [State v. Arsenault, supra, 115 N.H. at 113, 336 A.2d at 247 (Emphasis supplied)].
Although it is indisputable that such tests serve the purpose of gathering evidence with respect to a driver's culpable conduct, the privilege against self-incrimination is not necessarily implicated just because a suspect "is compelled in some way to cooperate in developing evidence which may be used against him." State v. Wyatt, 687 P.2d 544, 551 (Hawaii Sup.Ct. 1984). The Supreme Court of the United States has recognized that, without violating the Fifth Amendment, a suspect may be required to: (1) submit to the withdrawal of blood for analysis, Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); (2) wear a disguise and speak the words said by the perpetrator of a crime, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); (3) submit a handwriting exemplar, Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); (4) produce a voice exemplar, United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).
The courts of this State have similarly determined that nontestimonial evidence may be taken from a subject without impingement upon constitutional rights. See, e.g., State v. Dyal, 97 N.J. 229, 238 (1984) (drunken driver arrested by police with probable cause to believe he is intoxicated has no constitutional right to prevent involuntary taking of blood sample); State v. Hall, 93 N.J. 552, 563-564 (1983), cert. den., 464 U.S. 1008, 104 S.Ct. 526, 78 L.Ed.2d 709 (1983) (lineup which involves only display of evidence which is otherwise publicly visible is not constitutionally infirm); State v. Andretta, 61 N.J. 544, 551 (1972) (defendant may be compelled to speak for *354 voiceprint test); State v. Burke, 172 N.J. Super. 555, 557-558 (App.Div. 1980) (compelling defendant to give blood, hair and saliva samples does not violate rights against self-incrimination); State v. Papitsas, 80 N.J. Super. 420, 426 (App.Div. 1963) (removal of accused's shoes to obtain evidence to link him to crime is not violative of Fifth Amendment); State v. Carr, 124 N.J. Super. 114, 118 (Law Div. 1973) (taking of handwriting exemplars does not violate privilege against self-incrimination).
Accordingly, it is clear that the rule of Miranda v. Arizona is not applicable in situations involving field sobriety testing.
[Such] tests do not constitute testimonial compulsion but are merely a source of real or physical evidence and are not within the privilege against self-incrimination. [State v. Arsenault, supra, 115 N.H. 109, 336 A.2d at 247 (Emphasis supplied)].
A similar conclusion has been reached by a lower court of this State, which found the "results [of field sobriety tests] to be admissible because they are nontestimonial evidence and implicate no Fifth Amendment rights." State v. Taylor, 199 N.J. Super. 339, 343 (Law Div. 1984). Therefore, it is clear that the trial court properly admitted testimony regarding defendant's performance on the field sobriety tests which were requested prior to his arrest.
Defendant additionally appears to challenge the admissibility of his breathalyzer test results both on Fifth and Sixth Amendment grounds. Defendant's Fifth Amendment argument, must initially fail, since Miranda warnings are inapplicable where nontestimonial, physical evidence is taken. Moreover, courts of this State have specifically determined that breathalyzer or drunkometer tests may be compelled, without impingement upon constitutional rights. See, e.g., State v. King, 44 N.J. 346, 357 (1965) (drunkometer tests may be compelled since they do not require witness to disclose any knowledge he might have); State v. Vega, 200 N.J. Super. 448, 454 (Law Div. 1984) (breathalyzer test is nontestimonial and does not involve constitutional prohibition against compelled testimony); State v. Taylor, supra, *355 199 N.J. Super. at 343 (breathalyzer test results admissible since they do not implicate Fifth Amendment rights).
Defendant's further contention that he had the right to contact an attorney, before undergoing breathalyzer testing, is also without merit. In State v. Pandoli, 109 N.J. Super. 1, 4 (App.Div. 1970), we affirmed defendant's conviction for refusing to submit to a breathalyzer test, specifically holding that, as a matter of law, a defendant has no right to have the advice of an attorney before determining whether he will agree to a breathalyzer test. See also State v. Vega, supra, 200 N.J. Super. at 453; State v. Quaid, 172 N.J. Super. 533, 537 (Law Div. 1980). Cf. State v. Corrado, 184 N.J. Super. 561, 568-569 (App.Div. 1982) (defendant had no right to wait for one hour and talk to his attorney before agreeing to breathalyzer testing since delay frustrated purpose of implied consent statute, N.J.S.A. 39:4-50.2(a)).
Additionally, since the plain language of N.J.S.A. 39:4-50.2(a) indicates that anyone driving a motor vehicle in this State "shall be deemed to have given his consent to the taking of samples of his breath," defendant may not assert that he had a right to consult with counsel before submitting to breathalyzer testing. Accordingly, the trial court properly allowed the prosecution to present testimony regarding defendant's breathalyzer test results, as there was neither a Fifth nor a Sixth Amendment constitutional infirmity.

III.
Defendant's final contention that his conviction should be reversed because the State did not prove his guilt beyond a reasonable doubt is clearly without merit. R. 2:11-3(e)(2). Our careful review of the record satisfies us that there is sufficient credible evidence on the record to support his conviction for operating a motor vehicle while under the influence of intoxicating *356 liquor in violation of N.J.S.A. 39:4-50. See State v. Johnson, 42 N.J. 146, 162 (1964).
Accordingly, the judgment under review is affirmed.