**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000563
30-OCT-2020
07:48 AM
Dkt. 38 MO**

NO. CAAP-19-0000563

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellant, v.
DANIEL IRVING JAMES MANION, Defendant-Appellee

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTA-19-00266)

MEMORANDUM OPINION
(By: Chan, Presiding Judge, and Hiraoka and Wadsworth, JJ.)

Plaintiff-Appellant State of Hawaiʻi (**State**) appeals from the July 10, 2019 Notice of Entry of Judgment and/or Order and Plea/Judgment (**Interlocutory Order**), and the August 23, 2019 Findings of Fact, Conclusions of Law, and Order Granting in Part and Denying in Part Defendant's Motion to Suppress Statements (**Suppression Order**), both entered in the District Court of the First Circuit, Honolulu Division (**District Court**).[1]  The State contends that the District Court erred by granting in part Defendant-Appellee Daniel Irving James Manion's (**Manion**) motion to suppress statements, arguing that Manion was not in custody or seized until after he took a Standard Field Sobriety Test (**SFST or FST**) and was arrested for Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**), in violation of Hawaii

---

[1]  The Honorable Summer Kupau-Odo presided.  It appears that the Interlocutory Order is not appealable because it does not reference the District Court's ruling on the motion to suppress statements.  See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 4(b)(1).  In its Statement of Jurisdiction, the State clarifies its intent to appeal from the Suppression Order, which is appealable.

Revised Statutes (**HRS**) § 291E-61(a)(1) (Supp. 2018).[2] Thus, the State argues that various statements made by Manion, and Manion's performance on the SFST, should not have been suppressed. The State also challenges Conclusions of Law (**COLs**) Nos. 8, 10 through 15, 17, and 18 of the Suppression Order.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve the State's contentions as follows.

## I. BACKGROUND

On January 4, 2019, at about 4:40 a.m., Honolulu Police Department (**HPD**) Officer Corey Morgan received a report of a motor vehicle collision in the Kalama Valley area at Kealahou Street and Kipukai Place. When Officer Morgan arrived at the scene, he observed a white Hyundai with extensive front end damage. Manion was sitting in the driver's seat. While approaching the driver's window, Officer Morgan also observed a vehicle fluid trail leading up to the Hyundai, from the scene where a parked vehicle had been struck. Officer Morgan first asked Manion "if he was injured, if he was okay," and then asked him where he was coming from. Manion told Officer Morgan "he had a rough day and that he was at Sandy's prior to the incident and he did have an alcoholic beverage." Officer Morgan thought Manion said it was "a 40-ounce, a 40" and that "the accident wasn't a result of his drinking but him texting while driving." While talking to Manion, Officer Morgan detected a strong odor of alcohol coming from Manion's vehicle and observed him with red and watery eyes. Officer Morgan asked Manion for his driver's

---

[2] HRS § 291E-61(a) states, in relevant part:

> **Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
> (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

license, registration, and insurance, and Manion produced those documents. Officer Morgan then asked Manion if he would be willing to participate in the SFST. Manion agreed.

Prior to administering the SFST, Officer Morgan asked Manion several questions, which are known as medical rule-out questions. Officer Morgan asked Manion whether he had any physical defects; whether he was taking any medication; whether he was under the care of a doctor, eye doctor, or dentist; whether he had an artificial or glass eye; whether he was epileptic or diabetic; whether he was blind in either eye; and whether he wore corrective lenses. Manion answered no to all of the questions.

The SFST consists of three tests and prior to administering them, Officer Morgan gave Manion instructions on how to perform the tests, asked him if he understood the instructions, and asked him if he had any questions. Officer Morgan told Manion that he would be judged on how well he followed the instructions. Manion was not advised of his <u>Miranda</u> rights that night.[3] When the SFST was performed, Officer Morgan saw signs of impairment on all three tests, and Manion was offered the option of a preliminary alcohol screening.

HPD Officer Landon Miyamura (**Officer Miyamura**) arrived at the scene of the collision at about 5:00 a.m. Officer Miyamura offered Manion the preliminary alcohol screening. Following the screening, Manion was arrested for OVUII and transported to the main station, where Officer Miyamura administered an Intoxilyzer test to Manion. The Intoxilyzer test result indicated Manion's blood alcohol content. After administering the test, Officer Miyamura showed Manion the Intoxilyzer result and told him "this is your result[.]" According to Officer Miyamura, Manion responded: "[T]hat's impossible, I only had one 40 and two fireball shots in three hours."

Manion filed a motion to suppress statements. At the hearing on the motion to suppress, Officers Morgan and Miyamura,

---

[3] See <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

as relevant, testified to the above. In addition, Officer Morgan testified that he believed he had probable cause to arrest Manion for OVUII at the point when he (Officer Morgan) made observations consistent with alcohol impairment, and before asking Manion if he would participate in the SFST. Officer Morgan also stated that Manion was not free to leave at this point. During closing argument, the State asserted: "Now, at the point where [Officer Morgan] when he's speaking with the defendant notices indicia of alcohol consumption and he has observed that there is severe front end damage to the vehicle, the State is willing to concede that probable cause might have developed at that point. The officer certainly believed that it had developed at that point." The State then argued, among other things, that there was no interrogation after that point, but did not argue that Manion was not in custody.

After the hearing concluded, the District Court ruled that Officer Morgan did not have probable cause to arrest Manion during their initial exchange when Officer Morgan asked Manion if he was okay and where he was coming from. This ruling was later set forth in COL No. 7 of the Suppression Order, which states:

> 7. At the time Officer Morgan first approached Defendant and asked him if he was okay and where he was coming from, the officer knew only that Defendant had been involved in an accident. During this initial, brief conversation, Officer Morgan was trying to determine whether Defendant needed medical attention. Officer Morgan did not have probable cause to arrest Defendant for an offense; Defendant was not the focus of any criminal investigation. Therefore, Defendant was not in "custody," and his statements – admitting to drinking a "40" at Sandy's and then explaining that his texting, as opposed to drinking, caused the accident – were not the product of custodial interrogation.

On appeal, the State does not dispute this conclusion.

The District Court also ruled that Officer Morgan did have probable cause to arrest Manion for OVUII after their initial exchange, and before Morgan asked Manion to participate in the SFST. The District Court's COLs that are challenged on appeal state as follows:

> 8. Following the initial exchange with Defendant, at this stage of the encounter, Officer Morgan now knew: Defendant had hit a parked vehicle; Defendant had drank a "40"; and Defendant was exhibiting red and watery eyes and an odor of alcohol from his breath. Thus, not only did Defendant become the focus of an OVUII investigation,

4

Officer Morgan had sufficient probable cause to arrest Defendant for OVUII. Defendant also was not free to leave the scene. Accordingly, legal custody had attached.

. . . .

10. Focusing on Defendant's perception, without regard to Officer Morgan's intent, at the point where Defendant had already admitted to drinking a "40" and tried to explain how his texting, as opposed to his drinking, caused the accident, Officer Morgan should have known that all of his subsequent questions were reasonably likely to elicit incriminating responses. See [State v. ]Melemai, 64 Haw. [479,] 482, 643 P.2d [541,] 544 [(1982)] (finding "custody attached and Miranda warnings were required" after the officer's first question (if he had hit anyone with his car) and before the second (why he ran away)).

11. Asking Defendant if he would be willing to participate in the SFST, after Defendant claimed his texting caused the accident, was akin to saying, "I don't believe you," which reasonably invites more incriminating statements from Defendant. Asking Defendant the MRO questions – requests for personal health information about medications taken, whether he was under the care of a doctor or dentist – was reasonably likely to elicit an incriminating response, including admissions to having taken other substances. See State v. Rippe, 119 Hawaiʻi 15, 23, 193 P.3d 1215, 1223 (App. 2008) ("interrogation" comprises "a request for information").

12. The further Defendant progressed into the SFST, the more coercive the atmosphere became, so that asking him whether he understood the instructions and had no questions for each of the three parts of the SFST compounded the reasonable likelihood of more incriminating responses.

13. Defendant's responses were in fact incriminating. Defendant's answers to the MRO questions and his "yes" responses to understanding the SFST instructions gave Officer Morgan information that the officer used (and the State would argue the court use) to evaluate Defendant's performance on the SFST and, in turn, level of impairment. See Rippe, 119 [Hawaiʻi ]at 23, 193 P.3d at 1223.

14. These precise questions and responses were not at issue in State v. Wyatt, 67 Haw. 293, 303, 687 P.2d 544, 551 (1984), in which the Hawaiʻi Supreme Court held that because a field sobriety test seeks neither "communications" nor "testimony," but rather "an exhibition of physical characteristics of coordination," it does not violate the constitutional prohibition against compulsory self-incrimination. Again, pursuant to Kazanas, which was decided after Wyatt, the questions Officer Morgan asked Defendant (after Defendant was in legal custody and denied alcohol as the cause of his car accident) were reasonably likely to induce Defendant to "communicate" incriminating responses and hence constituted "interrogation."

15. Because Officer Morgan did not advise Defendant of his Miranda rights prior to asking him (1) to participate in the SFST, (2) the MRO questions, and (3) whether he understood the instructions for, and if he had any questions about, the HGN, W&T, and OLS, Defendant's responses to these questions are inadmissible at trial.

. . . .

5

17. Officer Morgan would not have administered the SFST without (1) asking for and obtaining Defendant's agreement to participate in the SFST, (2) asking for and obtaining Defendant's responses to the MRO questions, and (3) asking for and obtaining Defendant's assurances that Defendant understood the instructions to the HGN, W&T, and OLS. Accordingly, inasmuch as Defendant's performance of the SFST resulted from Officer Morgan illegally obtaining Defendant's responses to the foregoing questions, Defendant's performance on the SFST is inadmissible fruit of the poisonous tree.

18. Finally, Officer Miyamura should have known that showing Defendant the results of his breath test at the main station constituted an accusation that was reasonably likely to elicit an incriminating response. Accordingly, Defendant's response – "that's impossible, I only had one '40' and two fireball shots in three hours" – stems from custodial interrogation and is inadmissible.

## II. Discussion

The State contends that the District Court erred in suppressing "Manion's agreement to take the SFST, Manion's responses to the 'medical rule-out' questions, Manion's responses to the SFST instructions, Manion's responses to why he had been approached, Manion's performance on the SFST and any statements [he] made after the SFST," on the ground that Miranda warnings had not been read to Manion "immediately when he was stopped."[4/] The State argues that Miranda warnings were not required because Manion was not in custody or interrogated until after the SFST was administered and he was arrested for OVUII.

Thus, we must examine whether Manion's statements after he was asked to participate in the SFST stemmed from custodial interrogation. See State v. Uchima, 147 Hawaiʻi 64, 84, 464 P.3d 852, 872 (2020) ("as a matter of state constitutional law, statements stemming from custodial interrogation may not be used by the State unless it 'first demonstrate[s] the use of procedural safeguards effective to secure the privilege against self-incrimination'" (quoting State v. Kazanas, 138 Hawaiʻi 23, 34, 375 P.3d 1261, 1272 (2016))). Custodial interrogation is comprised of two components, "interrogation" and "custody."

---

[4/] Contrary to the State's argument, the District Court did not suppress Manion's various statements because Miranda warnings had not been read to Manion "immediately when he was stopped." See supra COLs 7, 15. In addition, the District Court did not suppress "Manion's responses to why he had been approached." See supra COLs 8, 10 through 15, 17, and 18.

Kazanas, 138 Hawaiʻi at 35, 375 P.3d at 1273.  See Uchima, 147 Hawaiʻi at 84, 464 P.3d at 872 ("Our caselaw has stated that 'two criteria are required before Miranda rights must be given: (1) the defendant must be under interrogation; and (2) the defendant must be in custody." (brackets omitted) (quoting State v. Kauhi, 86 Hawaiʻi 195, 204, 948 P.2d 1036, 1045 (1997))).

To determine whether an interrogation is custodial, the totality of the circumstances analysis focuses on "the place and time of the interrogation, the length of the interrogation, the nature of the questions asked, the conduct of the police, and any other relevant circumstances."  State v. Ah Loo, 94 Hawaiʻi 207, 210, 10 P.3d 728, 731 (2000) (brackets omitted) (quoting State v. Melemai, 64 Haw. 479, 481, 643 P.2d 541, 544 (1982)); see also Kazanas, 138 Hawaiʻi at 35, 375 P.3d at 1273 (reiterating same).  In this regard, the supreme court has acknowledged that "'no precise line can be drawn' between 'custodial interrogation,' on the one hand, and 'permissible general on-the-scene questioning,' on the other."  Ah Loo, 94 Hawaiʻi at 210, 10 P.3d at 731 (brackets omitted) (quoting State v. Patterson, 59 Haw. 357, 362, 581 P.2d 752, 755-56 (1978)).  The totality of the circumstances test applies to custodial interrogation, "in the sense that the defendant is deprived of his or her freedom of action in any significant way."  Kazanas, 138 Hawaiʻi at 35, 375 P.3d at 1273.

In contrast, "the touchstone in analyzing whether 'interrogation' has taken place is whether the police officer 'should have known that his or her words and actions were reasonably likely to elicit an incriminating response from the defendant.'"  Id. at 38, 375 P.3d at 1276 (brackets omitted) (quoting State v. Paahana, 66 Haw. 499, 503, 666 P.2d 592, 595-596 (1983)); see Uchima, 147 Hawaiʻi at 84, 464 P.3d at 872 ("[I]nterrogation encompasses not only express questioning, but also any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (quoting State v. Trinque, 140 Hawaiʻi 269, 277, 400 P.3d 470, 478 (2017))).

In State v. Wyatt, 67 Haw. 293, 687 P.2d 544 (1984), where the defendant was briefly detained and therefore seized, but not in custody or coercively questioned, the supreme court held that Miranda warnings were not required before she was asked if she had been drinking. Id. at 297-301, 687 P.2d at 548-50. The supreme court further concluded that the SFST that the defendant performed was not constitutionally infirm because the test sought only an exhibition of her physical characteristics of coordination, rather than communications or testimony, even though its purpose was to gather evidence of criminal conduct. Id. at 302-03, 687 P.2d at 551. In State v. Kaleohano, 99 Hawaiʻi 370, 377, 56 P.3d 138, 145 (2002), the supreme court noted that if probable cause to arrest or sustained and coercive questioning were present, then questions posed by the police could amount to custodial interrogation. Id. (quoting Ah Loo, 94 Hawaiʻi at 210, 10 P.3d at 731). The court concluded that because there was no probable cause to arrest the defendant, and in light of the fact that the officer did not subject the defendant to sustained and coercive questioning, the officer was not required to give the defendant a Miranda warning prior to asking her if she had been drinking. Id. at 377-78, 56 P.3d at 145-46.

Here, in its closing remarks at the suppression hearing, the State did not dispute – and indeed, stated it "was willing to concede" – that Officer Morgan had probable cause to arrest Manion for OVUII after their initial exchange and before Officer Morgan asked Manion if he would participate in the SFST. Relatedly, the State did not dispute that Manion was in custody when Officer Morgan asked him whether he would participate in the SFST. These issues are therefore waived on appeal. See, e.g., State v. Skapinok, No. CAAP-19-0000476, 2020 WL 2991783, at *5 (Haw. App. June 4, 2020) (Mem. Op.) (concluding that where the State conceded in the District Court that the defendant was in custody prior to the suppressed statements, the issue was waived on appeal), cert. granted, No. SCWC-19-0000476, 2020 WL 5836356, at *1 (Haw. Oct. 1, 2020); State v. Moses, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2003) (stating the general rule that if a party

8

fails to raise an argument at trial, that argument will be deemed to be waived on appeal); State v. Harada, 98 Hawaiʻi 18, 30, 41 P.3d 174, 186 (2002) (concluding that the prosecution failed to properly preserve its exigent circumstances claim and thus waived it); State v. Anger, 105 Hawaiʻi 423, 432-33, 98 P.3d 630, 639-40 (2004) (applying the doctrine of judicial estoppel in declining to address an argument by the prosecution-appellee that was inconsistent with the position the prosecution had taken in the trial court); State v. Adler, 108 Hawaiʻi 169, 175, 118 P.3d 652, 658 (2005) (defendant judicially estopped from claiming on appeal he possessed marijuana by prescription when he conceded in motion to dismiss it cannot be prescribed).

Moreover, the record supports the District Court's conclusions in COL No. 8. We recognize that red and glassy eyes and "imperfect driving," standing alone, are insufficient to establish probable cause to arrest a person for OVUII. Kaleohano, 99 Hawaiʻi at 377-78, 56 P.3d at 145-46. Here, however, the evidence showed that after Officer Morgan's initial exchange with Manion, Officer Morgan knew that Manion: (1) had hit a parked vehicle; (2) was exhibiting red and watery eyes and an odor of alcohol; and (3) had said that he was coming from Sandy's and had drunk a "40." On this record, we cannot conclude that the District Court was wrong in ruling that Officer Morgan had probable cause to arrest Manion for OVUII after their initial exchange, as set forth in COL No. 8. Given the additional testimony by Officer Morgan that Manion was not free to leave the scene at that point, and based on the totality of the circumstances, we also cannot conclude that the District Court was wrong in ruling that legal custody had attached.

Because "[a]n individual in police custody may not be subjected to interrogation without first being advised of his [or her] Miranda rights[,]" the remaining issue is whether the subsequent questions by police that resulted in the suppressed statements and SFST performance constitute interrogation. Melemai, 64 Haw. at 481, 643 P.2d at 543-44 (quoting Patterson, 59 Haw. at 358-59, 581 P.2d at 753); see Uchima, 147 Hawaiʻi at 84-85, 464 P.3d at 872-73. In Uchima, the supreme court rejected

a similar claim that an officer's preliminary questions prior to administering an FST constituted an interrogation requiring Miranda warnings. 147 Hawaiʻi at 84-85, 464 P.3d at 872-73. The court reasoned:

> Here, [the officer who administered the FST] asked [the defendant] whether he would participate in an FST, whether he understood the instructions of the individual tests, and whether he had any questions. These preliminary questions were not reasonably likely to lead to incriminating responses because neither an affirmative or negative response to these questions is incriminating. Rather, the questions allow the officer to determine whether [the defendant] was willing to undergo the FST and whether he understood the officer's instructions prior to performing the three tests comprising the FST. Thus, these questions were not of such nature that [the officer who administered the FST] should have known that they were likely to elicit an incriminating response.

Id. at 84, 464 P.3d at 872; see also Pennsylvania v. Muniz, 496 U.S. 582, 603-04 (1990) (rejecting the contention that Miranda warnings are required prior to an inquiry as to whether a defendant understood SFST instructions, because the "focused inquiries were necessarily 'attendant to' the police procedure held by the court to be legitimate.")

In Uchima, the supreme court also ruled that the defendant's performance on the FST did not constitute an interrogation requiring Miranda warnings. 147 Hawaiʻi at 84-85, 464 P.3d at 872-73. The court stated:

> [The defendant's] performance on the FST does not constitute incriminating statements. "[T]he privilege [against self-incrimination] is a bar against compelling 'communications' or 'testimony[.]'" State v. Wyatt, 67 Haw. 293, 303, 687 P.2d 544, 551 (1984) (quoting Schmerber v. California, 384 U.S. 757, 763-64, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). In Wyatt, this court held that when conducting an FST the State does not seek "communications" or "testimony," but rather, "an exhibition of 'physical characteristics of coordination.'" Id. (quoting State v. Arsenault, 115 N.H. 109, 336 A.2d 244, 247 (1975)). Here, [the officer who administered the FST] did not seek "communications" or "testimony" from [the defendant]. Rather, in conducting the FST, the officer sought "an exhibition of 'physical characteristics of coordination.'" Id. "Consequently, the field sobriety test was not rendered infirm by the constitutionally guaranteed privilege against compulsory self-incrimination." Id.

Id. at 84, 464 P.3d at 872-73 (footnote omitted).

The same analysis applies here. Asking Manion whether he was willing to participate in the SFST, whether he understood the instructions to the SFST, and whether he had any questions

did not implicate his right to self-incrimination and did not constitute interrogation, as these questions were not reasonably likely to lead to incriminating responses. Similarly, Manion's performance on the SFST did not constitute incriminating statements in response to an interrogation requiring Miranda warnings. Thus, we conclude that the District Court erred in COL Nos. 10 through 15 and 17 by suppressing Manion's responses to whether he would participate in the SFST, whether he understood the instructions and had any questions regarding the SFST, and the officer's observations of Manion's performance on the SFST. Accordingly, COL Nos. 10 through 15 and 17 are wrong in relevant part.

However, because Manion was in custody for OVUII before the SFST was administered (see supra), the medical rule-out questions constituted interrogation warranting Miranda warnings. See State v. Sagapolutele-Silva, 147 Hawaiʻi 92, 101-03, 464 P.3d 880, 889-91 (App. 2020), cert. granted, SCWC-19-0000491, 2020 WL 5544434, at *1 (Haw. Sept. 16, 2020). As stated above, "the touchstone in analyzing whether interrogation has taken place is whether the police officer should have known that his [or her] words and actions were reasonably likely to elicit an incriminating response from the defendant." Kazanas, 138 Hawaiʻi at 38, 375 P.3d at 1276 (brackets omitted) (quoting Paahana, 66 Haw. at 503, 666 P.2d at 595-96) (internal quotation marks omitted). Relying upon Rhode Island v. Innis, 446 U.S. 291 (1980), Kazanas reiterated that "interrogation consists of any express question — or, absent an express question, any words or conduct — that the officer knows or reasonably should know is likely to elicit an incriminating response." Id. (quoting State v. Ketchum, 97 Hawaiʻi 107, 121, 34 P.3d 1006, 1020 (2001)) (internal quotation marks omitted). An incriminating response is any response, either inculpatory or exculpatory. Innis, 446 U.S. at 301 n.5. In contrast, a physical inability to articulate words in a clear manner due to lack of muscular coordination of the tongue and mouth is not testimonial evidence for purposes of self-incrimination. Muniz, 496 U.S. at 590-91.

11

Here, during his testimony, Officer Morgan identified the medical rule-out questions that he posed to Manion, and the District Court summarized those questions in Finding of Fact (**FOF**) No. 7.[5] Based on, among other things, our analysis in Sagapolutele-Silva, we conclude that the medical rule-out questions posed to Manion were reasonably likely to elicit an incriminating response and, therefore, constituted interrogation. See 147 Hawaiʻi at 101-03, 464 P.3d at 889-91.

Manion was in custody when the medical rule-out questions were asked. He had not been given Miranda warnings. The medical rule-out questions constituted interrogation. Thus, we conclude that Manion's responses to those questions should have been suppressed and the District Court did not err to the extent it so concluded in COL Nos. 10 through 15.

The State also challenges COL No. 18, in which the District Court concluded that Manion's response to being shown the results of his Intoxilyzer test at the main police station stemmed from custodial interrogation and was inadmissible. The State does not dispute that Manion had been arrested and was in custody at that time. The State also does not dispute FOF No. 15, in which the District Court found:

> At no point in time did either officer tell Defendant he had the right to remain silent and anything he said could be used against him. Defendant was never advised of any of his Miranda rights.

Yet the State makes no argument that showing Manion the results of his Intoxilyzer test in these circumstances did *not* constitute custodial interrogation. We therefore deem the point of error waived. See HRAP Rule 28(b)(7).

---

[5] FOF No. 7 states:

> Prior to administering the SFST, Officer Morgan asked Defendant questions referred to as the Medical Rule Out ("MRO") questions, including whether Defendant was taking any medications or whether he was under the care of a doctor or dentist. Officer Morgan asked the questions to rule out causes, other than alcohol, that could affect Defendant's performance on the SFST. Defendant answered "no" to the MRO questions.

## III. Conclusion

For these reasons, we conclude that the District Court erred in suppressing Manion's responses to whether he would participate in the SFST, whether he understood the instructions and had any questions regarding the SFST, and the officer's observations of Manion's performance on the SFST. We conclude that the District Court did not err in suppressing Manion's responses to the medical rule-out questions and to being shown the results of his Intoxilyzer test. Accordingly, the August 23, 2019 Findings of Fact, Conclusions of Law, and Order Granting in Part and Denying in Part Defendant's Motion to Suppress Statements is affirmed in part and vacated in part. The case is remanded to the District Court for further proceedings.

DATED: Honolulu, Hawaiʻi, October 30, 2020.


On the briefs:                          /s/ Derrick H.M. Chan
                                        Presiding Judge
Brian R. Vincent,
Deputy Prosecuting Attorney,
City & County of Honolulu,              /s/ Keith K. Hiraoka
for Plaintiff-Appellant.                Associate Judge

Alen M. Kaneshiro
for Defendant-Appellee.                 /s/ Clyde J. Wadsworth
                                        Associate Judge